## CLARENCE B. BERNARD *v.* WARDEN OF THE MARYLAND HOUSE OF CORRECTION

[No. 19. October Term, 1946.]

274

*Decided November 21, 1946.*

*Supplemental opinion filed January 9, 1947.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

Submitted on brief by the appellant, no appearance
for the appellant.

Submitted on brief, by *William Curran, Attorney General,* and *J. Edgar Harvey, Assistant Attorney General,* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appeal in this case is from the refusal of Judge W. Conwell Smith, Chief Judge of the Supreme Bench of Baltimore City, sitting in the Criminal Court, to grant an application for a writ of *habeas corpus.* The petition, filed in proper person and evidently prepared by the petitioner himself, alleged that in June, 1945, he was indicted in Anne Arundel County as a result of false testimony given to the Grand Jury; that subsequently he was tried and convicted, although no evidence or testimony was produced to prove that he violated any laws of the State; that the offenses with which he was charged were: riot, disturbing the peace, assault and battery, destruction of State property, and unlawful assembly; that he was taken into court after 42 days of cruel punishment, during which he was forced to drink water from a toilet stool and sleep on a cold floor; that prejudice and discrimination were used against him; that before sentence was passed the trial Judge asked if he had anything to say, and the appellant replied that no one had given evidence or testimony against him; that the trial judge then observed that he felt the petitioner might have had a hand in the riot because he was "outstanding"; that after being returned to the House of Correction he was denied the right to speak to his counsel concerning the filing of an appeal; that within ten days from the date of his conviction he attempted to file a petition appealing his conviction, but that the warden destroyed the petition; and that the warden has attached false statements to his subsequent petitions for a writ of *habeas corpus.*

These allegations are amplified by the petitioner in his brief filed in this court in proper person. He does

not specify any false testimony given to the Grand Jury or produced at the trial, but contends that the testimony produced was not sufficient to implicate him. He states that the only witness called by the State, Deputy Warden Steiner, testified that he saw the petitioner "standing up with his hands on the gate" at the time of the disturbance. The alleged false statements of the Warden, attached to his petition for a writ of *habeas corpus,* appear to have been summaries of previous applications for a writ, which are claimed to be inaccurate.

The application to Judge Smith was signed by the petitioner on March 7, 1946. On March 13, 1946, Judge Smith, through his bailiff, wrote to the appellant that:

"Judge Smith has received your application for writ of *habeas corpus* and he asks me to advise you that since he is presiding over Criminal Court this year he does not grant writs of *habeas corpus.* You should address your application to the judge of one of the law courts."

The petitioned did not enter any appeal in the Baltimore City Court, from a denial of the writ, but communicated with one of the Judges of this Court. After some unavoidable delay, this Court directed that an appeal be entered and the record sent up, *nunc pro tunc.*

It appears from the record that the petitioner was sentenced to four years in the House of Correction on March 26, 1943, following a conviction on a charge of larceny, by Judges Woodward, Prescott and Schnauffer, in the Circuit Court for Montgomery County; that a serious riot occurred at the House of Correction on June 2, 1945; that on August 12, 1945, the petitioner was tried and convicted of riot and assault and given an additional sentence of five years by Judges Clark and Boylan, in the Circuit Court for Anne Arundel County; and that the petitioner was represented by counsel (Messrs. Rullman and Strauss) at the trial last mentioned.

The first question presented by this record is the propriety of Judge Smith's refusal to entertain the application for the writ on the ground that he was engaged in trying cases in the criminal court.

Section 1 of Art. 42 of the code provides: "The court of appeals and the chief judge thereof shall have the power to grant the writ of *habeas corpus,* and to exercise jurisdiction in all matters relating thereto throughout the whole State. The circuit courts for the respective counties of this State, and the several judges thereof, out of court, the superior court of Baltimore City, the court of common pleas of said city, the circuit court and circuit court No. 2 of Baltimore City, and the Baltimore City court, and the judges of said several courts, out of court, and the judge of the court of appeals from the city of Baltimore, shall have the power to grant the writ of *habeas corpus,* and to exercise jurisdiction in all matters pertaining thereto."

The first sentence of this section was held unconstitutional, in *Sevinskey v. Wagus,* 76 Md. 335, 25 A. 468, as an attempt to confer original jurisdiction upon the appellate court, but it was recognized that individual judges throughout the state possess the power, by virtue of their office, to grant the writ under section 6, Art. 4 of the Constitution. In *State v. Glenn,* 54 Md. 572, 594, it was held that this power could not be restricted by the legislature, territorially, and, by implication, it may be assumed that the legislature could not restrict the power of any individual judge to grant the writ. It does not follow, however, that the particular judge to whom an application is addressed is obliged to hear it under all circumstances.

This question has been considered by the Federal Court of Appeals of the 9th circuit, where by rule of court cases in their District Courts are assigned in regular rotation. It was held that an application addressed to a particular judge could properly be transferred to another. It was pointed out that the practical operation of the rule tends to facilitate and expedite a hearing, and that the right of appeal prevents any injustice to the petitioner. *Burall v. Johnston,* 9 Cir., 146 F. 2d 230, citing *Wright v. Johnston,* D. C., 49 F. Supp. 748, 749. See also the comment on these cases in 44 Mich. L. R. 305.

It has also been held in the Federal courts that although the appellate courts and judges possess the power to grant the writ, it will not ordinarily be exercised, because the orderly administration of justice requires that the District Courts should have the opportunity to pass on the question in the first instance. *Sweetney v. Johnston,* 9 Cir., 121 F. 2d 445; United States ex rel. *Bernstein v. Hill,* 3d Cir., 71 F. 2d 159; *O'Brien v. Swope,* 9 Cir., 106 F. 2d 471. See also *Ex parte* Albernathy, 320 U. S. 219, 64 S. Ct. 13, 88 L. Ed. 3.

Cases in the courts of Baltimore City are not assigned in regular rotation, but the judges of the Supreme Bench serve by annual rotation in the various courts. All of the judges of the Supreme Bench are also additionally assigned to assist each and every judge in his special assignment. It has been the practice of the Supreme Bench, expressed in a resolution, that all applications for writs of *habeas corpus* be docketed in the Baltimore City Court, and brought before the judge to whom the application is addressed, sitting as of the Baltimore City Court. It has also been the practice for the judges assigned to the Criminal court not to hear such applications, because of the pressure and intensity of the work in that court. This practice likewise finds support in the fact that Section 1, Art. 42 of the Code, quoted *supra,* omits any reference to the Criminal Court. Without conceding any binding effect to that omission, it may be taken as an indication of legislative approval of the practice.

Thus, while Judge Smith, by virtue of his office, possessed the undoubted power to hear the application, we are not prepared to hold that he was required to do so under the circumstances. We think it would have been better practice, however, to have referred the application to another available judge for immediate consideration and hearing, if it required a hearing, in order that the relevant facts might be developed prior to an appeal.

The appeal in this case, under Section 3C of Article 42, as enacted by Ch. 702 of the Acts of 1945, is from "the

refusal to issue a writ." Section 3B provides: "The judge considering the case may, at his discretion, dismiss the petition or require it to be amended or otherwise amplified unless the application alleges facts sufficient, if true, to probably show that the applicant is illegally detained. The judge may, in his discretion, make such examination of public records as seems desirable to determine whether the writ should be granted." °

While, as we have said, we think Judge Smith should have referred the application to another available judge, rather than deny the application on the ground assigned, the denial can be justified, if the petition did not make out a *prima facie* case. *Olewiler v. Brady,* 185 Md. 341, 44 A. 2d 807; *State v. Glenn, supra.* For the purposes of this case we shall assume that the application was not premature. *Holiday v. Johnston,* 313 U. S. 342, 61 S. Ct. 1015, 85 L. Ed. 1392.

The petitioner's chief complaint is that he did not have a fair trial. The alleged fact that he was subjected to brutal treatment by the Warden would seem to have no bearing upon this issue. Whether *habeas corpus* is ever available to a prisoner who, though lawfully in custody, seeks such remedy upon the ground that he has been subjected to unlawful treatment, is a question upon which the courts are not in entire agreement. See note 155 *A. L. R.* 145. We leave the question open. The points we shall consider are: (1) That the indictment was founded upon legally insufficient evidence before the Grand Jury, (2) that the evidence produced at the trial was insufficient to support a verdict, and (3) that the accused was, in effect, cheated of his right of appeal by the Warden's refusal to allow him to consult with his counsel after conviction, and the destruction by the Warden of the paper-writing which he attempted to file within ten days of his conviction.

1. This Court has held that the competency of testimony before a Grand Jury will not be inquired into by the courts. *Pick v. State,* 143 Md. 192, 121 A. 918. Compare *Leon v. State,* 180 Md. 279, 23 A. 2d 706. It has

also been held that the requirement of secrecy is inviolable. *Coblentz v. State,* 164 Md. 558, 166 A. 45, 88 A. L. R. 886. We have no statute on the subject. The question as to whether the legal sufficiency of evidence before a Grand Jury can be inquired into, is one that has not been decided in this State. It is generally held, however, that if there is some evidence to support the indictment, the courts will not inquire into its sufficiency. See cases collected in 59 *A. L. R.* 567, 573. "At common law an indictment returned by a grand jury was unimpeachable because the grand jury proceedings were clothed in secrecy and a court had no access to the evidence upon which the indictment was based." *Greenberg v. Superior Sourt,* 19 Cal. 2d 319, 121 P. 2d 713, 715. In some States this has been changed by statute, but unless changed, the prevailing rule appears to be that *habeas corpus* in not a proper remedy. *In re Kennedy,* 144 Cal. 634, 78 P. 34, 67 A. L. R. 406, 103 Am. St. Rep. 117, 1 Ann. Cas. 840. We are not concerned, in the case at bar, with whether the question could be raised on direct appeal, by motion to quash or otherwise. We are constrained to hold that it cannot be raised in this proceeding.

2. We have held in a long line of cases that this Court has no power to review the legal sufficiency of evidence to support a conviction in a criminal case, on direct appeal. *Peters v. State,* 187 Md. 7, 48 A. 2d 586; *Meyerson v. State,* 181 Md. 105, 28 A. 2d 833; *Rasin v. State,* 153 Md. 431, 435, 138 A. 338; *Myers v. State,* 137 Md. 482, 484, 113 A. 87; *Dick v. State,* 107 Md. 11, 17, 68 A. 286, 576. The only remedy is by motion for new trial, and no appeal lies from a denial of such a motion. *Wilson v. State,* 181 Md. 1, 26 A. 2d 770. It has never been suggested that *habeas corpus* is a proper remedy in such a case, or indeed in any case except where the sentence is shown to be a nullity. *Price v. Clawns,* 180 Md. 532, 536, 25 A. 2d 672; 1 *Bailey, Habeas Corpus,* Sec. 30, p. 79. It has been held in the Federal Circuit Court of Appeals of this Circuit that the District Court

could not review, on *habeas corpus*, the sufficiency of evidence in the Baltimore Criminal Court to support a conviction. *Wright v. Brady*, 4 Cir., 129 F. 2d 109. Compare *United States v. Lindsley*, 7 Cir., 148 F. 2d 22, 158 A. L. R. 525. The Supreme Court has held that the legal sufficiency of evidence produced in a District Court cannot be reviewed by *habeas corpus*. *Harlan v. Mc-Gourin*, 218 U. S. 442, 31 S. Ct. 44, 54 L. Ed. 1101, 21 Ann. Cas. 849. Whether the legal sufficiency of evidence to convict in a criminal case could be reviewed by the Supreme Court in cases involving the Fourteenth Amendment, by *certiorari* to this Court or the trial court, or otherwise (compare *Canizio v. New York*, 327 U. S. 82, 66 S. Ct. 452, 90 L. Ed. 545, and *Betts v. Brady*, 316 U. S. 455, 461, 62 S. Ct. 1252, 86 L. Ed. 1595), is a question for the Supreme Court to decide and is not before us for consideration. Even if the state machinery is so inadequate as to constitute a lack of due process, the remedy is not to be found in a judicial enlargement of the historic scope of the state writ of *habeas corpus*. See *Hawk v. Olson*, 326 U. S. 271, 66 S. Ct. 116, 90 L. Ed. 61; *Hawk v. Olson*, 145 Neb. 306, 16 N. W. 2d 181; and *Van Woods v. Nierstheimer*, 326 U. S. 692, 66 St. Ct. 270, 90 L. Ed. 408. In *Morhaus v. Supreme Court of New York*, 293 N. Y. 131, 56 N. E. 2d 79, 84, the Court of Appeals of New York said: "Certainly a general rule that the judgment of a court having jurisdiction to try an accused may be challenged by writ of *habeas corpus* in another court upon the ground that the requirements of due process were not satisfied in all respects at the trial, would produce a chaotic situation. Often the question whether there has been a violation of constitutional rights at the trial may involve close questions of fact and law, sometimes appearing in the record, sometimes only by proof *dehors* the record. An appeal to a higher court is ordinarily the appropriate corrective process for error at the trial, and appearing in the record; a motion to vacate the judgment and for a new trial is ordinarily the appropriate corrective process for defect not appearing on the

record or where for any other reason an appeal would not furnish a remedy. These proceedings are open to an accused in this State."

3. The crucial question in the case at bar concerns the alleged interference by the Warden with the exercise of the petitioner's right of appeal. In *Coates v. State,* 180 Md. 502, 25 A. 2d 676, counsel for the accused was not requested and none was appointed. After conviction, the Warden delayed the forwarding of a written request for an appeal, addressed to the Chief Judge of this Court, until the time for appeal had expired. Under the special circumstances of that case, this Court held that failure to appoint counsel was a denial of due process, and as a corrective procedure entertained that appeal despite the expiration of the time for appeal fixed by rule of court. The Court said (180 Md. at page 504, 25 A. 2d at page 677) : "The prisoner did all that his ignorance and lack of advice permitted in forwarding his appeal in time, and the nature of his objection requires that it be accepted as of that time." There was no intimation, however, that a remedy could have been afforded through application for a writ of *habeas corpus* to a State court.

Deprivation of a right of appeal would not necessarily amount to a lack of due process under all circumstances. Doubtless a State might, by appropriate legislative action, make the decisions of the trial courts final and irreviewable in all cases, or in certain classes of cases. But where an appeal is allowed generally, from judgments in criminal cases (Code, Art. 5, Sec. 86), interference by a State official with the perfecting of an appeal may amount to a denial of equal protection within the meaning of the Federal Constitution. *Hysler v. Florida,* 315 U. S. 411, 422, 62 S. Ct. 688, 86 L. Ed. 932, and cases there cited.

Upon the authority of the Coates case, we think it proper to call upon the petitioner, counsel for the petitioner, and the Attorney General, to furnish affidavits to support or contradict the allegations of interference by the Warden, whereupon, on proper motion, this Court will consider whether an appeal should be allowed. Re-

gardless of the outcome of that proceeding, however, we hold that the application for a writ of *habeas corpus* does not make out a *prima facie* case for relief, and the refusal of Judge Smith to grant the writ will be affirmed.

*Order affirmed, without costs.*

The following supplemental opinion was filed *Per Curiam*:

Following the decision in this case, affidavits were submitted by the appellant and the Warden of the House of Correction. We find from the evidence presented in this form that there is no foundation for the charge that a paper addressed to this Court, intended as an appeal from appellant's conviction on August 2, 1945, was handed to the Warden on August 7, 1945, and was destroyed by him. The appeal is accordingly hereby disallowed.