## JEWETT *v.* STATE

[No. 114, October Term, 1947.]

290

*Decided April 1, 1948.*

*Supplement Opinion, per curiam, filed May 21, 1948.*

The cause was submitted before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

Submitted on brief by *Joseph R. Jewett*, in *pro per*.

Submitted on brief by *Hall Hammond, Attorney General, J. Edgar Harvey, Assistant Attorney General*, and *J. Bernard Wells, State's Attorney for Baltimore City*, for the appellee.

MARKELL, J., delivered the opinion of the Court.

Appellant was convicted of "statutory burglary" (Code, 1943 Supplement, Art. 27, sec. 34), and of being a rogue

and vagabond (Code, Art. 27, sec. 559), and was sentenced to imprisonment in the House of Correction for two years. The indictment charged, in four counts, that he did unlawfully break a specified warehouse with intent [1] "to commit a certain felony * * * therein, to wit, with the intent * * * certain goods and chattels * * * there * * * found * * * feloniously to steal, take and carry away * * *" and [2] "to commit a certain misdemeanor * * * therein, to wit, with the intent * * * certain goods and chattels under the value of $25 * * * there * * * found * * * unlawfully to steal, take and carry away * * *"; and that he "was found unlawfully in" the warehouse, with "an intent—certain goods and chattels * * * there * * * found * * * [3] feloniously to steal, take and carry away * * *" and [4] "unlawfully to steal, take and carry away * * *."

The Attorney General says the first two counts "are apparently intended to charge an offense under section 34" and the third and fourth counts "are based upon section 559." Under section 34 breaking a warehouse with "the intent to steal, take or carry away the personal goods of another of the value of twenty-five dollars ($25.00) or more" is punishable by imprisonment in the penitentiary for not more than ten years. The charge of intent "feloniously to steal" certain goods is equivalent to a charge of intent to steal "property of sufficient value to make the larceny a felony", i. e., of the value of $25 or more. *Hickman v. Brady*, 188 Md. 103, 52 A. 2d 72; *State v. Wiley*, 173 Md. 119, 194 A. 629, 113 A. L. R. 1267. Under section 559 being found in a warehouse with an intent to steal "any goods or chattels" is punishable by imprisonment in the penitentiary or in jail for not more than two years. Felonious intent is essential under section 34, but not under section 559. The second count therefore is defective. The third and fourth counts and, except as above stated, the first count are in substantially the words of the statutes and are, therefore, good. The sentence, including designation of the House of Correc-

tion (Art. 27, sec. 788), is good under either the first, third or fourth count. The verdict was a general verdict "Guilty". Defect in the second count was therefore not prejudicial.

In each count the offense was charged as committed on May 11, 1947. Commitment was filed May 13th, indictment May 19th, and appellant was arraigned, tried before the court without a jury, convicted and sentenced on May 21st. On May 26th he wrote, from the House of Correction, to the trial judge: "I wish to appeal my case. I do not think I received a fair trial because several important facts were not brought out at the said trial. 1. At the time of the trial I was still a member of the armed forces. 2. I have been under the care of a psychiatrist in the service of the U. S. Army. 3. I had no counsel or time to secure counsel from the Court. 4. I do not think the sentence given me was justified under the circumstances. 5. The prosecutor based his plea on my past record and not on the case at hand. 6. My character witnesses were not allowed to give their testimony. 7. I was not made aware that I could call my wife to the stand in my defense. I beg that I be granted a new trial so that I can prove my innocence and go home to my wife. She is going to divorce me because of this sentence." The judge replied on June 2d that he had delivered the letter to the clerk of the Criminal Court, "and you should address all further future communications to him because I am not going to make any change of sentence, and it will be useless to write me further." On June 5th appellant wrote the clerk that he did not want his sentence cut, but wanted a new trial "at which I can be exonorated", and that his letter of May 26th "was mailed to reach the court before the ten day limit for filing an appeal expired," and asked what action he must take and what action the court was taking in the matter. The clerk replied on June 18th that the judge intended to do nothing further in the case. Under date of June 18th appellant wrote (mailed to "Court of Appeals, Clerk of Court, City Court House, Baltimore, Md.") that he wished

to appeal his case due to the fact that his trial was "unfair and inconclusive", alleging, "I was not permitted to examine witnesses in my behalf. All the evidence was not brought out. The arresting officer was not present in the courtroom but was represented by another officer who said he made the arrest. ·Witnesses for the state were stopped when their stories tended to conflict with the evidence and testimony of other witnesses for the state. I was given no chance to gather evidence in my behalf and I had no legal counsel. * * * I would like to have the same witnesses I requested before and also several others who will corroborate my testimony. I would like the court to appoint counsel for me but if this is deemed unjustified I think I can handle the situation myself." He also said he was "not able to post $75, for court costs" and requested "that court costs be set aside."

At the request of this court there was forwarded to this court a certified copy of the docket entries and indictment and the correspondence above referred to. Treating the letter of May 26th as an appeal, we ordered the case docketed. *Coates v. State,* 180 Md. 502, 25 A. 2d 676; *Bernard v. Warden,* 187 Md. 273, 49 A. 2d 737, 741. In a letter to the clerk of this court appellant says that: He has no money to pay for a transcript of his trial or any other expenses of an attorney; at his trial, though he asked for a legal representative the court would give him none; the only right he was informed of was that he could cross-examine witnesses, and not that he need not take the witness stand; he was not informed what what constitutes burglary; he is now aware of the legal definition of burglary and according to Art. 27, sec. 33, no burglary was committed "because the place I entered was not a dwelling house and the door was improperly closed", "also, nothing was taken."

When the case was reached and submitted we notified the Attorney General that we could not, without more information, pass upon certain allegations on the record, *viz.*: That appellant had no counsel or time to secure

counsel, though he asked for counsel and his request was denied; his character witnesses were not allowed to give their testimony; he was not made aware that he could call his wife to testify in his defense; he has no money to pay for the testimony; and the record shows that he was indicted on May 19th, arraigned on May 21st and on the same day tried, convicted and sentenced. We requested the Attorney General to make some arrangement to have the testimony written up, including any request or statements by appellant or the State's Attorney or the court in connection with the matters he complains of.

We are informed that the stenographer who took the testimony has died and his notes have not been preserved. In the absence of any transcript the trial judge has certified to us that: He does not recall the facts presented at the trial; during the year he heard over 2000 cases, only eight of them jury trials. He can definitely say that had appellant requested counsel he would have appointed one. His records show that no such request was made. He can also state that appellant was not denied opportunity to present his witnesses; he does not recall whether appellant had any but if he had them ready to testify they would have been given ample opportunity to do so; this would also apply to the wife. [The record contains the names of three witnesses, including "Dorothy Jewett," summoned on behalf of appellant.] He does not recall appellant's stating that he had no money to pay for the costs of transcribing testimony. There was ample testimony to warrant a conviction and the sentence was felt to be justifiable. He has always made it a point to make sure that the traversers were given ample opportunity to waive [or claim?] a jury trial and has insisted that the clerks read the charges in a slow manner in order that the issues might be better understood. Whenever requested to appoint counsel he has done so. If anything unusual occurred in the course of the trial notations would be made in his book. In this

case there was no notation of any sort, and, therefore, he is convinced that nothing unusual happened.

In *Smith v. State,* 1942, 180 Md. 529, 25 A. 2d 681, in which the accused, an habitual offender, was sentenced to terms of imprisonment aggregating fifty years, this court held that the fact that counsel was not appointed for him did not require reversal of conviction, the record showing that he was experienced with court trials, that the court took ample care of his rights, and showing actual fairness of the trial. In *Betts v. Brady,* 316 U. S. 455, 472, 62 S. Ct. 1252, 86 L. Ed. 1595, decided a few weeks later, in which the accused was sentenced to eight years imprisonment for robbery, it was held that on the facts of the case, the commission of a robbery was unquestioned, the State's evidence consisted of identification of the accused, the defense was an alibi, the "simple issue" was the veracity of the opposing testimony, and the accused had once before pleaded guilty to larceny and served a sentence and was not wholly unfamiliar with criminal procedure—refusal of the court to appoint counsel was not a denial of due process.

Judges' notes are older than stenographers' transcripts. A judge could not be expected to remember, or even make full notes of, the testimony in 2000 cases in a year. Indeed, as we cannot under existing procedure review either the weight or legal sufficiency of the evidence, a complete transcript would be neither necessary nor helpful except in so far as it might relate to the fairness of the conduct of the trial in the particular respects above mentioned. Notwithstanding the necessarily negative character of part of the judge's certificate, it is clear that appellant did not ask appointment of counsel. From his own complaint as to "his past record" he must have been "not wholly unfamiliar with criminal procedure". We cannot say that mere failure to appoint counsel, without request, or to ask whether appellant desired such appointment was, apart from other circumstances, a denial of due process. Without attempting to trace the tenuous line between what does and what does not constitute due

process in this respect, we may say that we think the wise practice, in any serious case, is to appoint counsel unless the accused intelligently waives such appointment in response to question whether he desires it.

It is also clear that the court did not deny appellant opportunity to present his witnesses, including his wife, "if he had them ready to testify". It is, however, a fact that he had no counsel, and it is not shown or inferrable that he had "time to secure counsel," if he was able and desirous of so doing, or time to obtain attendance of his "character witnesses". Generally, and in this particular class of cases, justice itself or effective justice means speedy justice. But speedy justice requires care to avoid injustice. When a man imprisoned is arraigned, tried, convicted and sentenced, without protection of counsel, two days after indictment, ten days after the alleged crime, it is not obvious that his rights to obtain counsel of his own selection and to obtain attendance of witnesses, have been adequately protected.

The procedural circumstances of this case are *sui generis*. We must infer from the judge's certificate that no use of appellant's record was permitted except on cross-examination and on the question of sentence. Of the seven items in the letter of May 26th none except items 3 (and perhaps in connection therewith 7) and 6 present matters which (if actually before us) would be reviewable by us. We cannot say appellant has actually been done any injustice. But in the state of the record, we are unable to say that with respect to aid of counsel and opportunity to obtain counsel and witnesses, he actually received a fair trial. In the extraordinary circumstances we think the ends of justice require that the judgment be reversed and appellant given a new trial.

Our action in disposing on this case on this informal presentation, without an adequate record and without payment of costs, is not to be considered a precedent in cases not involving the extraordinary circumstances in this case.

*Judgement reversed and new trial awarded.*

298

Supplemental Opinion.

Per Curiam.

Since the expiration of the time for motion for reargument the Attorney General has advised us that the second count in the indictment was intended to charge an offense, not under Code Art. 27, sec. 34 (as suggested in his brief) but under sec. 389, 1947 Supplement, Act of 1943, ch. 229. As the sufficiency of the second count under section 389 was not considered by us, the statement in the opinion that the second count was defective (under section 34) is not to be regarded as a decision that it was defective under section 389.