## RAYMOND, Superintendent, *v.* STATE, ex rel. SZYDLOUSKI

[No. 106, October Term, 1948.]

603

604

*Petition for leave to appeal granted December 8, 1948.*

*Decided March 30, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Harrison L. Winter, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Clarke Murphy, Jr., Special Assistant Attorney General, J. Bernard Wells, State's Attorney for Baltimore City,* and *John C. Weiss, Assistant State's Attorney for Baltimore City,* on the brief, for the appellant.

Submitted on brief by appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Henry R. Raymond, Superintendent of the Maryland State Reformatory for Males, has brought this appeal from an order of Judge Edmond H. Johnson, of the First Judicial Circuit, discharging Leonard Szydlouski from appellant's custody after hearing on habeas corpus. The judge stayed the order pending appeal. Code Supp. 1947, art. 42, § 3C.

On September 2, 1947, petitioner, then eighteen years old, was convicted in the Criminal Court of Baltimore on charges of carrying a concealed weapon and burglary. He was sentenced to serve in the Reformatory six months for carrying a concealed weapon and two years for burglary, the terms to run consecutively.

At the hearing on habeas corpus on August 6, 1948, petitioner swore that, while he was held in confinement before his trial in the Criminal Court, he asked a guard to allow him to use the telephone, and for that purpose to give him some of his money, which had been taken from him, to call a lawyer, or to ask his sister to pay for one, but was denied the request. He also swore that he asked the captain for the same favor. He further stated that when he was taken to the Court House someone asked him if he had a lawyer, and he replied "No," and he was told to wait in the waiting room for trial. He was asked by an Assistant State's Attorney whether he wanted to plead guilty or not guilty, and whether he wanted to be tried by the Court or by jury. He pleaded guilty of carrying a concealed weapon, and not guilty of burglary. He elected to be tried by the Court without a jury. He

did not ask the Court to appoint a lawyer for him. He was given the opportunity to cross-examine the State's witnesses, and he cross-examined some of them. He was given the opportunity to testify in his own defense, and he took the stand. He was also given the opportunity to call any witnesses he desired to testify in his behalf.

Judge Johnson held that there was nothing in the record to show that petitioner had been advised of his right to be represented by either counsel of his own choosing or by someone appointed by the court, and that in view of his age and his general position and the seriousness of the charges against him, he had been deprived of his constitutional rights.

*First.* We consider whether the trial in the Criminal Court violated Article 21 of the Declaration of Rights, which provides that in all criminal prosecutions every man has a right "to be allowed counsel." Originally in England a prisoner was not permitted to be heard by counsel on the general issue of not guilty on any indictment for treason or felony. That rule was relaxed by statute in 1695 to the extent of permitting a person accused of treason the privilege of being heard by counsel. *7 Will.* 3 ch. 3. The rule forbidding the participation of counsel remained in force as to indictments for felony until changed by statute in 1836. *6 & 7 Will.* 4, ch. 114. The early English common-law rule was not accepted in America. In at least twelve of the thirteen Colonies the right of the accused to have counsel in the trial of any criminal charge was fully recognized. The Constitutions of many of the States in varying language guarantee to persons accused of crime the right to have the assistance of counsel for their defense. In 1777 New York adopted a provision similar to that in the Maryland Declaration of Rights, which was originally adopted in 1776. A constitutional mandate that the accused should have the right to be heard by himself and by his counsel was adopted by New Hampshire in 1774, by Pennsylvania in 1776, by Delaware in 1782, and by Connecticut in 1818. New Jersey had its first constitutional provision on the

subject in 1776, North Carolina and South Carolina in 1868, Rhode Island in 1843, Georgia in 1798, and Massachusetts in 1790.

In the light of the common-law practice in England it is evident, as Justice Roberts observed in *Betts v. Brady,* 316 U. S. 455, 466, 62 S. Ct. 1252, 1258, 86 L. Ed. 1595, that the constitutional provision to the effect that the accused should be "allowed" counsel in criminal prosecutions (Article 21, Maryland Declaration of Rights) was intended to do away with the rules which denied representation by counsel, but was not aimed to compel the State to provide counsel for the accused. In that case the defendant, who had been indicted for robbery in the Circuit Court for Carroll County, Maryland, was unable to employ counsel on account of lack of funds, and so informed the judge at his arraignment. He requested that counsel be appointed for him, but the judge advised him that it was not the practice in Carroll County to appoint counsel for indigent defendants except in prosecutions for murder or rape. The defendant then pleaded not guilty and elected to be tried without a jury. Witnesses were summoned in his behalf, and he examined these witnesses and cross-examined the State's witnesses. The judge found him guilty and imposed a sentence of eight years. While serving his sentence, he forwarded a petition for habeas corpus to Chief Judge Bond of the Court of Appeals. Judge Bond denied the relief sought and remanded him to the custody of the warden of the Penitentiary. On writ of *certiorari* the Supreme Court upheld Judge Bond's action.

In *Coates v. State,* 180 Md. 502, 509, 25 A. 2d 676, 679, decided a few weeks before *Betts v. Brady, supra,* we said: "Never in the State Courts has it been held that care for the interests of defendants in the appointment of counsel has been required as an essential to a valid trial, under constitutional or other requirement." This statement is in accord with the remark in *Betts v. Brady, supra,* concerning the purpose of constitutional provisions such as Article 21. Failure or refusal to appoint counsel

is not a violation of Article 21. Notwithstanding this remark in *Betts v. Brady, supra,* the United States Supreme Court, both before that case, *Johnson v. Zerbst,* 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461, 146 A. L. R. 357; *Walker v. Johnston,* 312 U. S. 275, 61 S. Ct. 574, 85 L. Ed. 830; *Glasser v. United States,* 315 U. S. 60, 62 S. Ct. 457, 86 L. Ed. 680, and since, *Foster v. Illinois,* 332 U. S. 134, 67 S. Ct. 1716, 91 L. Ed. 1955; *Bute v. Illinois,* 333 U. S. 640, 68 S. Ct. 763, 92 L. Ed. 986, has construed the provision of the Sixth Amendment that the accused shall enjoy the right "to have the Assistance of Counsel for his defense" as requiring the appointment of counsel in all cases where an accused is unable to secure an attorney, and the right is not intentionally and competently waived. But this provision of the Sixth Amendment is not applicable to State Courts and is not a part of due process as guaranteed by the Fourteenth Amendment.

*Second.* We consider whether the failure of the Criminal Court to appoint or offer to appoint counsel for petitioner was a denial of due process of law in violation of the Fourteenth Amendment. This was the ultimate question decided by the Supreme Court in *Betts v. Brady, supra,* and also by the Court of Appeals in *Coates v. State,* 180 Md. 502, 25 A. 2d 676, and in *Smith v. State,* 180 Md. 529, 25 A. 2d 681, both of which were decided April 22, 1942. In *Powell v. Alabama,* 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527, in which the circumstances of the trial made it a mockery (compare *Moore v. Dempsey,* 261 U. S. 86, 43 S. Ct. 265, 67 L. Ed. 543), the Court had held that at least in capital cases effective appointment of counsel is an essential of due process. Compare *Palko v. Connecticut,* 302 U. S. 319, 58 S. Ct. 149, 82 L. Ed. 288. In *Smith v. O'Grady,* 312 U. S. 329, 61 S. Ct. 572, 85 L. Ed. 859, the Court had held that obtaining a plea of guilty by trickery from a man without counsel was a denial of due process.

In *Coates v. State, supra,* where the defendant pleaded guilty to four indictments and not guilty to five, and the Criminal Court of Baltimore imposed sentences totaling

90 years, it appeared that the defendant was only 19 years old, was inexperienced in court procedure, and was not represented by counsel, and there was no cross-examination of the State's witnesses, and confessions not properly introduced were used against him. We reversed the judgments because failure to appoint counsel under the circumstances was a denial of due process. But in *Smith v. State, supra,* where the defendant was tried on four indictments, one for robbery, two for robbery with a deadly weapon, and one for assault, we refused to disturb the sentences totaling 50 years and 6 months, although the defendant was not represented by counsel at the trial, since he was an old offender, had been tried for criminal offenses several times before and was familiar with criminal trials, and it further appeared that his rights had been protected at the trial. In *Jewett v. State,* 190 Md. 289, 296, 58 A. 2d 236, 238, we would not say that "mere failure to appoint counsel, without request, or to ask whether appellant desired such appointment was, apart from other circumstances, a denial of due process," but we did suggest that the wise practice in any serious case is to appoint counsel, unless the accused intelligently waives such appointment in response to a question whether he desires it. We might add that it would also be wise to make a docket entry to this effect whenever appointment of counsel is offered and waived. The judgment was reversed in the *Jewett* case because we were unable to say from the state of the record that the accused had actually received a fair trial with respect to the assistance of counsel and opportunity to obtain witnesses.

In *Betts v. Brady,* 316 U. S. 455, 472, 62 S. Ct. 1252, 1257, 86 L. Ed. 1595, the Supreme Court held that the Fourteenth Amendment does not require "that in every criminal case, whatever the circumstances, a state must furnish counsel to an indigent defendant." In that case the defense was an alibi and the simple issue was the veracity of the testimony. The accused was not helpless, but was a man 43 years old with ordinary intelligence

and ability to take care of his own interests on the trial of that narrow issue. He was not wholly unfamiliar with criminal procedure, having previously pleaded guilty to larceny and served a sentence. He was tried without a jury. The Court said that such trials are "much more informal than jury trials and it is obvious that the judge can much better control the course of the trial and is in a better position to see impartial justice done than when the formalities of a jury trial are involved."

In *Coates v. State*, 180 Md. 502, 509, 25 A. 2d 676, 679, this Court said that "due process of law", as provided for in the Fourteenth Amendment to the Federal Constitution, has been interpreted to mean "law of the land" as provided by Article 23 of the Maryland Declaration of Rights. If we were at liberty to apply this test, we should unhesitatingly hold that in the instant case due process was not denied. There is no evidence of actual or probable unfairness in the trial before Judge Niles or injustice in the result. The present State Constitution is older than the Fourteenth Amendment, and what is now Article 23 of the Declaration of Rights is older than the Constitution of the United States. From time immemorial thousands of non-capital criminal cases have been tried until recently without the appointment of counsel. When Article 23 was adopted by the Convention of 1867, neither the people of Maryland nor any judge or lawyer imagined that it had been habitually violated throughout the 90 years it had been in force under the Constitutions of 1776, 1851 and 1864.

Of course, we are not at liberty to set up the Maryland concept of due process against controlling decisions of the Supreme Court. In *Coates v. State*, 180 Md. 502, 511, 512, 25 A. 2d 676, 680, we quoted the opinion of the Circuit Court of Appeals in *Carey v. Brady*, 4 Cir., 125 F. 2d 253, in which the three judges, after carefully studying the decisions of the Supreme Court, were "divided and in doubt." Each judge had a different opinion on the questions whether the failure of the court to appoint counsel is (1) a denial of due process of law justify-

ing a reversal of the judgment of conviction on appeal, and (2) sufficient to destroy the jurisdiction of the court and justify release of the prisoner on habeas corpus. The Court then said: "Widespread confusion seems also to exist in the minds of judges and lawyers throughout the country with regard to these questions."

Since that time at least fifteen more decisions of the Supreme Court directly in point, not including others decided on jurisdictional points, have not dispelled the confusion. Of these fifteen cases, only two, *Hawk v. Olson*, 326 U. S. 271, 66 S. Ct. 116, 90 L. Ed. 61, and *De Meerleer v. Michigan*, 329 U. S. 663, 67 S. Ct. 596, 91 L. Ed. 584, in which the judgments of State Courts were reversed, were decided by unanimous opinions. On June 14, 1948, two cases from the Supreme Court of Pennsylvania were decided, in one of which, *Gryger v. Burke*, 334 U. S. 728, 68 S. Ct. 1256, 92 L. Ed. 1683, denial of due process was not found, with four justices dissenting, while in the other, *Townsend v. Burke*, 334 U. S. 736, 68 S. Ct. 1252, 92 L. Ed. 1690, denial of due process was found, with three justices dissenting.

In *Foster v. Illinois*, 332 U. S. 134, 67 S. Ct. 1716, 1718, 91 L. Ed. 1955, the Court, speaking through Justice Frankfurter, four justices dissenting, said of the Sixth Amendment: "By virtue of this provision, counsel must be furnished to an indigent defendant prosecuted in a federal court in every case, whatever the circumstances. * * * Prosecutions in State courts are not subject to this fixed requirement. So we have held upon fullest consideration. *Betts v. Brady, supra.* But process of law in order to be 'due' does require that a State give a defendant ample opportunity to meet an accusation. And so, in the circumstances of a 'particular situation,' assignment of counsel may be 'essential to the substance of a hearing' as part of the due process which the Fourteenth Amendment exacts from a State which imposes sentence. * * * Such need may exist whether an accused contests a charge against him or pleads guilty.

"The rationale of this application of due process was first expounded in *Powell v. Alabama*, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527. * * * And so, in every case in which this doctrine was invoked and due process was found wanting, the prisoner sustained the burden of proving, or was prepared to prove but was denied opportunity, that for want of benefit of counsel an ingredient of unfairness actively operated in the process that resulted in his confinement."

In the instant case petitioner has not sustained the burden of proving that for want of benefit of counsel "an ingredient of unfairness actively operated in the process that resulted in his confinement." However, in *Uveges v. Pennsylvania*, 335 U. S. 437, 69 S. Ct. 184, 185, 93 L. Ed. 127, a burglary case, the Supreme Court held that due process requires that a youth inexperienced in the intricacies of criminal procedure be offered by the trial court the advice of counsel when he faces or pleads guilty to a serious charge such as carries a maximum sentence of eighty years. Three justices dissented on jurisdictional grounds because of the prisoner's failure to exhaust direct remedies before resorting to habeas corpus. Justice Reed, delivering the opinion of the Court, said: "Some members of the Court think that where serious offenses are charged, failure of a court to offer counsel in state criminal trials deprives an accused of rights under the Fourteenth Amendment. They are convinced that the services of counsel to protect the accused are guaranteed by the Constitution in every such instance. * * * Only when the accused refuses counsel with an understanding of his rights can the court dispense with counsel. Others of us think that when a crime subject to capital punishment is not involved, each case depends on its own facts. * * * Where the gravity of the crime and other factors—such as the age and education of the defendant, the conduct of the court or the prosecuting officials, and the complicated nature of the offense charged and the possible defenses thereto—render criminal proceedings without counsel so apt to result in injustices

as to be fundamentally unfair, the latter group hold that the accused must have legal assistance under the Amendment whether he pleads guilty or elects to stand trial, whether he requests counsel or not. Only a waiver of counsel, understandingly made, justifies trial without counsel."

In *Wade v. Mayo,* 334 U. S. 672, 683, 684, 68 S. Ct. 1270, 1276, 92 L. Ed. 1647, the District Court found that the accused was eighteen years old, and though not wholly a stranger to the court room, having been convicted of prior offenses, was still an inexperienced youth unfamiliar with court procedure, and not capable of adequately representing himself, and held that under the circumstances denial of his request for appointment of counsel constituted a denial of due process. In affirming the District Court, the Supreme Court, speaking through Justice Murphy, with four justices dissenting, said: "We are not disposed to disagree with the findings and conclusion of the District Court. Its determination was a purely factual one to the effect that Wade was an inexperienced youth incapable of adequately representing himself even in a trial which apparently involved no complicated legal questions. This is a judgment which is peculiarly within the province of the trier of facts, based upon personal observation of Wade. And we do not find that the District Court's determination was clearly erroneous.

"There are some individuals who, by reason of age, ignorance or mental capacity, are incapable of representing themselves adequately in a prosecution of a relatively simple nature. This incapacity is purely personal and can be determined only by an examination and observation of the individual. Where such incapacity is present, the refusal to appoint counsel is a denial of due process of law under the Fourteenth Amendment."

If the *Wade* and *Uveges* cases are not in harmony with the *Betts, Foster* and *Bute* cases, it is our duty to follow the later cases. As we have said, petitioner in the instant case has not sustained the burden of proving that any

injustice occurred and affected the decision because of want of counsel. In the *Wade* and *Uveges* cases, however, the Court seems to hold that it is a denial of due process to fail to appoint counsel, whether requested or not, for an individual who, by reason of age, ignorance or mental capacity, is incapable of representing himself adequately in a prosecution of a relatively simple nature, although there is no evidence that the court, sitting without a jury, has actually failed to protect him adequately and to prevent any unfairness in the trial or injustice in the result. By that test the judgment of conviction in the instant case cannot stand. The alleged refusal of the guard and the police captain to permit petitioner to telephone was not a denial of due process, but it does indicate a desire for a lawyer and lack of experience as to how to get one, and lends color to the alleged fact that petitioner was not asked whether he wanted one appointed for him. It is significant that the Assistant State's Attorney, who questioned petitioner at the habeas corpus hearing about his own interview with him before the trial, did not himself testify or offer other testimony in contradiction or amplification of petitioner's version of the interview. There is no evidence of previous experience with criminal procedure. He had been sent as a delinquent to St. Mary's Industrial School. But in theory juvenile courts are not criminal courts, and in practice they studiously avoid the atmosphere of a courtroom. Judge Johnson, who saw and heard petitioner testify, found that the sum total of relevant circumstances "amount substantially to an abridgement of his rights."

We have not been called upon to decide whether petitioner can be retried in case the judgment of conviction is held void on account of denial of due process of law. We leave this question open by modifying the order appealed from by remanding petitioner to appellant, to be transferred ot the custody of the Warden of the Baltimore City Jail to be held for any further proceedings which the State may take. *Basta v. State,* 133 Md. 568, 105 A. 773; *State ex rel. Shatzer v. Warden of House of*

*Correction,* 192 Md. 728, 64 A. 2d 711; *Palko v. Connecticut,* 302 U. S. 319, 322, 58 S. Ct. 149, 82 L. Ed. 288; *Wade v. Mayo,* 334 U. S. 672, 685, 68 S. Ct. 1270, 92 L. E. 1246. As the effect of the decision is to set aside the judgment of conviction in the original case, we are directing the Clerk of this Court to transmit a copy of the mandate to the Criminal Court of Baltimore.

*Order modified and as modified affirmed, without costs.*