## LENOIR *v.* STATE

[No. 124, October Term, 1950.]

496

*Decided April 11, 1951.*

*Rehearing denied May 16, 1951.*

*Stay of execution and enforcement of judgment denied May 22, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MAR-KELL, JJ.

*Joseph G. Lenoir,* in proper person.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City,* and *Charles*

*E. Orth, Jr., Assistant State's Attorney,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Joseph G. Lenoir, a 26 year old law student at the University of Baltimore, was tried in the Criminal Court of Baltimore on three indictments charging extortion, and one charging assault upon a police officer. He was represented by counsel of his own selection and elected a jury trial. At the conclusion of the testimony the State entered a *nol pros* as to one of the indictments for extortion. He was found guilty on the third and fourth counts of indictment no. 1767 (extortion), on the first and eighth counts of indictment no. 1769 (extortion), and on the first count of indictment no. 1770 (assault upon an officer). After a motion for new trial had been overruled by the Supreme Bench, he was sentenced to two years in the Maryland House of Correction under indictment no. 1767, and to a like term under indictment no. 1769, to run concurrently. He was fined $25.00 and costs under indictment no. 1770, which he paid. The appeal is from these judgments and sentences. After the appeal was entered, his attorney struck out his appearance, and the case was argued here by the appellant in proper person.

As developed by the State's witnesses, it appears that on March 23, 1950 Harry E. Cann, Sr. received a telephone call from a man who claimed to be a law enforcement officer and to have an indictment against Cann and proof that Cann had approached Dr. G. Loutrell Timanus to procure an abortion operation. On the following day, this same person telephoned again and said that he was in the State's Attorney's office and wanted $3,000 from Cann. Cann testified that he did not know Lenoir at that time, and that he had never seen Dr. Timanus.

On March 30, 1950 Miss Anne E. Adams, a registered nurse employed by Dr. Timanus, received a telephone call from a man whom she identified at the trial as the appellant. He stated that he had information that Dr.

Timanus was guilty of evasion of income taxes in a large amount, and unless he was paid $10,000 within twenty-four hours he would inform the Federal authorities. Miss Adams called Miss Bessie E. Nelson, medical secretary to Dr. Timanus, who called Dr. Timanus in Florida. He instructed them to inform the police, and they did so. On the following evening Lieutenant Godman of the Police Department waited in Miss Adams' apartment, with Miss Nelson, until the man called again. At Godman's suggestion, they told the caller they would turn over $5,000 in $50 bills to an intermediary at St. Paul and Madison Streets at 10 P.M. The intermediary was to identify himself by means of a piece of paper on which the letter "A" would be written in lipstick.

Shortly before 10 P.M., the appellant met John Arthur Sullivan, a merchant seaman, outside a tavern, and asked him if he wanted to earn $10 by picking up a package of letters from a woman. Sullivan agreed, and they drove to within a block of the meeting place in a taxicab. The seaman walked to the corner, identified himself with a paper given him by the appellant, and received the package, whereupon he was arrested by the police. He protested that he was acting for a man down the street, whom the police saw run into an alley, but failed to apprehend.

Several hours later, Miss Adams received another telephone call from the appellant, asking "what kind of a deal she was pulling". He said he now wanted $10,000 in cash, and would telephone her the next day. After several more telephone calls to Miss Adams and Miss Nelson, another meeting place was arranged at the corner of Charles and Redwood Streets at 1 P.M. April 5, 1950. Shortly before that hour the appellant stopped a Diamond cab driven by Robert S. Spoon and asked him to pick up a package for him; that this was "official business". He told him how one of the women would be dressed, to tell them "Mac" sent him, and to bring the package to the Custom House.

This time the police trap was effective. When the driver picked up the package, containing a wad of paper and a marked bill, the police followed the cab to the Custom House and arrested Lenoir as he was receiving the package. The arresting officer displayed his badge, but a fight ensued in which one of the officers was hit in the eye, and Lenoir was hit on the head with the butt of a revolver. Lenoir was booked at the Central Police Station, then taken to the Mercy Hospital for medical treatment, then to the Police Station where he was interviewed by Captain Kriss in the presence of Anselm Sodaro, Assistant State's Attorney. The appellant admitted that he had made telephone calls to Miss Adams and to Miss Nelson. He later admitted to Sergeant Humphrey that he had called Mr. Cann. On the following day, he was interrogated by Captain Kriss in the presence of Miss Adams, Miss Nelson and Mr. Cann.

At the close of the State's case, the appellant took the stand in his own defense. He admitted that he had talked to Miss Adams and Miss Nelson on the telephone on several occasions, though not on the dates in question. He also said they called him on several occasions, in an effort to bribe him to withhold from the Federal authorities information he had concerning the evasion of income tax payments by Dr. Timanus. He admitted telephoning to Mr. Cann, to obtain his cooperation in reporting the activities of Dr. Timanus, but denied making any demand for money. He said he offered to share the reward. He admitted meeting Sullivan, giving him the marked paper and arranging for him to obtain a package. He admitted similar arrangements with Spoon. His explanation was that he intended to report these matters to the Federal authorities and obtain an informer's fee. He admitted that he had been previously convicted of conspiracy, or false pretense, in connection with the alteration of a motor vehicle title, and sentenced to three years in the House of Correction, for which he had been paroled. He admitted striking Officer Warren, but said he did not know he was a policeman as he was not in uniform.

The appellant contends that he was deprived of his constitutional rights throughout the proceedings, that his counsel was guilty of misconduct and collusion with the State, and that the State was guilty of "malfeasance". His first point seems to be that he was improperly subjected to interrogation by Captain Kriss, before he retained counsel. That contention is fully answered by our recent decisions in *Grear v. State,* 194 Md. 335, 348-349, 71 A. 2d 24, 30 and *Day v. State,* 196 Md. 384, 76 A. 2d 729. The record indicates that the appellant was fully aware of his right to decline to answer. Indeed, he declined to answer most of the questions put to him and did not confess. Such admissions as he made he repeated when he took the stand. He does not allege any mistreatment. If, as now appears, his conversation in the presence of the prosecuting witnesses enabled them to identify his voice, this was not a denial of constitutional rights.

The appellant complains that at the preliminary hearing before the magistrate, Mr. Sodaro was invited to sit beside the magistrate and did so. Even if this could be deemed an impropriety, it has no bearing upon the subsequent indictment and trial, which was conducted by Mr. Orth. Mr. Sodaro testified at the trial as to statements made by the accused at the interview in the office of Captain Kriss. Nor is it material to consider whether the initial bail was excessive, as contended. There is nothing to support the appellant's contention that the Grand Jury acted upon inadmissible and insufficient evidence. *Bernard v. Warden,* 187 Md. 273, 279, 49 A. 2d 737.

The appellant contends that the Grand Jury was improperly constituted, in that a divorced wife of Mr. Cann was a member of that body. It is generally held that a juryman related to a prosecuting witness is not disqualified. *State v. Hilton,* 87 S. C. 434, 69 S. E. 1077; *State v. Peterson,* 110 Utah 413, 174 P. 2d 843; note 18 A. L. R. 375. It is also generally held that relationship by affinity is terminated by death or divorce. Note

117 A. L. R. 800. No objection to her qualification was raised in the court below.

The appellant asserts that he did not receive copies of the indictments and was never arraigned. The docket entries in each case contain the notation, under date of April 25, 1950, "Copy of indictment served—receipt filed" and under date of May 26, 1950, "Arraigned and pleads not guilty". The jury trial took place on June 7, 1950. The record shows that on May 26, 1950 the accused was in court with his counsel and the Clerk said: "Stand a moment please. Mr. Dippel, in indictment no. 1767 the State charges Joseph G. Lenoir with extortion, in no. 1769 with extortion, in no. 1770 with assault on an officer, and in no. 1996 with extortion. You have copies of all the indictments? (Mr. Dippel) Yes, I do. The plea is not guilty to each and every count in each indictment. (The Clerk) How do you wish to be tried? (Mr. Dippel) By a jury. We are here for the purpose of a deposition." If, as he now asserts, his counsel did not show him copies of the indictments, the record does not show that he at any time made any complaint or objection to the trial court. His counsel was authorized to speak for him and he was apprised of the substance of the charges. We find no violation of constitutional rights or of Rule 1 of the Criminal Rules of Practice and Procedure. None of the trivial errors in the docket entries go to the heart of the case.

After the arraignment on May 26, the testimony of the witness Sullivan was taken in open court in the presence of the accused. This deposition was subsequently read to the jury at the trial without objection. The appellant contends that the taking of this deposition was in violation of Rule 4 of the Criminal Rules of Practice and Procedure, since it was taken on motion of the State, rather than on motion of the defendant. The court was informed that the witness wanted to go to sea, but had not been committed for failure to give bail. It is clear that the taking of the deposition was not covered by the rule, but defense counsel agreed to it.

We express no opinion as to whether the rule could constitutionally be invoked by the State in the absence of consent. In any event, we find no reversible error, since the appellant took the stand and freely admitted in substance what the witness testified to. *Colie v. State,* 193 Md. 608, 611, 613, 69 A. 2d 497, 498-499, and cases cited.

The appellant complains that his counsel waived his right to examine prospective jurors on their *voir dire,* and argues that one of the jurors must have been prejudiced against him because he was employed by a concern for whom the accused had previously been employed. There is no showing that the juror was in fact prejudiced, or that he requested his counsel to strike him. The appellant also complains that he requested his counsel to summon nine different witnesses, but none of them appeared. There is no showing that these witnesses were material, or that any question concerning their non-appearance was raised in the court below.

The appellant contends that the testimony of Miss Adams, Miss Nelson and Mr. Cann was inadmissible, because the telephone caller was not identified. But all three witnesses testified at the trial that they then identified the voice as that of Lenoir, although they did not know to whom they were talking at the time of the calls. The appellant argues that their testimony was perjured and procured by the State, because he asserts that they testified they did not recognize his voice at the preliminary hearing, and had not seen him from that time to the time of trial. Both Miss Nelson and Mr. Cann testified that they identified his voice when they saw and heard him talking to Captain Kriss. The testimony was clearly admissible, its weight and the credibility of the witnesses being for the jury. *Rowan v. State,* 175 Md. 547, 557, 3 A. 2d 753. It may be noted that there was no objection to their testimony at the trial.

The appellant also complains that Dr. Timanus was not called by the State, and that Mr. Harry E. Cann, Sr., who did testify, was named in one of the indictments

as Howard E. Cann. It is clear that Dr. Timanus knew nothing about the case, except by hearsay from Miss Nelson. The State was under no obligation to produce him. There was no objection to the testimony of Harry E. Cann, Sr. and the appellant admitted when he took the stand that he had called Harry E. Cann, Sr. on the telephone.

Although there were no demurrers or motions to quash the indictments, and no demurrer prayers or motions offered at the close of the whole case, the appellant contends that the indictments were fatally defective, and that there was a failure to prove the *corpus delicti*. He also charges error in the advisory instructions of the court to the jury, although there was no objection to these instructions. We will consider these contentions together. Count 3 of indictment no. 1767, charged that the accused "did verbally threaten Bessie E. Nelson and Anne E. Adams, who were then and there the agents and employees of one G. Loutrell Timanus, to accuse the said G. Loutrell Timanus of evading the payment of income tax, which accusation, if true, would bring the said G. Loutrell Timanus into contempt and disrepute, with a view then and there to extort and gain from the said Bessie E. Nelson and Anne E. Adams certain moneys * * * the property of the said G. Loutrell Timanus * * *." This count was obviously based upon Section 585, Article 27 of the Code (1939 Ed.) creating a felony. The appellant seems to contend that the section has no application because the alleged threat to accuse was not made directly to Dr. Timanus, but to his agents and employees. We find no such limitation in the Statute. *Cf. Toomer v. State*, 112 Md. 285, 288, 76 A. 118; 1 Wharton Crim. Proc. (10th Ed.) § 612. Count 4 of the indictment charged the accused with the misdemeanor of falsely threatening the agents and employees of Dr. Timanus to accuse him of a crime, and was obviously laid under Section 586, Article 27 of the Code. *Cf. Lano v. State*, 195 Md. 363, 77 A. 2d 125. There was no proof that the charge was false, nor did the advisory instruc-

tion of the trial court mention this necessary element. However, since there was a verdict of guilty on each count and the third count was good, there is no reversible error. Cf. *Jewett v. State*, 190 Md. 289, 293, 58 A. 2d 236; *Novak v. State*, 139 Md. 538, 543, 115 A. 853, and *Gibson v. State*, 54 Md. 447. The sentence is properly attributable to the more serious charge, under which the accused might have received ten years, instead of the two years he did. Cf. *Berger v. State*, 179 Md. 410, 415, 20 A. 2d 146. Since the sentence under indictment no. 1769 was concurrent with that under indictment no. 1767, it is fruitless to consider whether there was a fatal variance, on account of the misnomer of Mr. Cann, or an insufficiency of proof. Both of the counts in this indictment were laid under Section 585, so no question of falsity is in issue. We find no basis for objection to indictment no. 1770, or the proof offered under it.

We have dealt at undue length with the foregoing objections. The short answer to all of the appellant's contentions is that no valid objections were raised at the trial. His attempt to repudiate the actions of his counsel throughout the trial is unavailing, since we find no evidence of misconduct or collusion, and no denial of basic rights to a fair trial. Doubtless defense counsel was faced with a problem as to whether technical objections should be raised at every point, or whether the case should be tried in a manner best calculated to impress the jury with a frank meeting of the issues. This was largely the appellant's own choice, since he elected to take the stand and put his version and interpretation of his admitted acts before the jury. "Where in a State criminal trial the defendant is represented by competent and experienced counsel, even constitutional rights known or presumed to be known to counsel to exist must be held to have been waived if not made at all or * * * inadequately presented." *U. S. ex rel. Jackson v. Brady*, D. C. 47 F. Supp. 362, 367, quoted in *Glickman v. State*, 190 Md. 516, 526, 60 A. 2d 216 and *Conley v. Warden*, 190 Md. 750, 752, 59 A. 2d 684.

As we have been at pains to point out, the appellant was not prejudiced by the manner in which his case was presented.

*Judgments affirmed, with costs.*