## BURANDOUS KENNEDY v. STATE OF MARYLAND

[No. 12, September Term, 1980.]

*Decided November 12, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Michael R. Malloy, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*F. Ford Loker, Assistant Attorney General,* with whom

was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We are involved in this case with the proper application of the non-constitutional per se exclusionary rule enunciated in *Johnson v. State,* 282 Md. 314, 384 A.2d 709 (1978), concerning a statement taken from an accused in violation of M.D.R. 723 a.[1] We shall hold that statements made by appellant Burandous Kennedy *subsequent* to his appearance before a judicial officer are not the "tainted fruit of a poisonous tree" and hence are admissible in evidence against him notwithstanding the delay in initially bringing him before such a judicial officer. The record clearly demonstrates that he was not interrogated relative to the crimes here at issue prior to his appearance before a judicial officer. We likewise shall hold that his contentions relative to loss of stenographic notes pertaining to his waiver of a jury trial in one case are not grounds for reversal. Hence, we shall affirm the judgments of the Court of Special Appeals in

---

1. At the time here relevant M.D.R. 723 a read:

> A defendant who is detained pursuant to an arrest shall be taken before a judicial officer without unnecessary delay and in no event later than the earlier of (1) 24 hours after arrest or (2) the first session of court after the defendant's arrest upon a warrant or, where an arrest has been made without a warrant, the first session of court after the charging document is filed. A charging document shall be filed promptly after arrest if not already filed.

As Judge Levine pointed out for the Court in Johnson v. State, 282 Md. 314, 316 n. 1, 384 A.2d 709 (1978), effective July 1, 1977, Chapter 700 of the Maryland District Rules underwent extensive revision. However, only slight changes were made in the language of the former M.D.R. 709 a which was redesignated M.D.R. 723 a. In that opinion for the sake of clarity all references were to the Maryland District Rules as they then appeared unless otherwise indicated. The rule was again revised July 1, 1979, so· that it now reads:

> A defendant who is detained pursuant to an arrest shall be taken before a judicial officer without unnecessary delay and in no event later than 24 hours after arrest. A charging document shall be filed promptly after arrest if not already filed.

*Kennedy v. State,* 44 Md. App. 662, 410 A.2d 1097 (1980), and three unreported cases.[2]

In four separate trials Kennedy was convicted in the Circuit Court for Montgomery County of second degree rape (case No. 1); second degree rape and burglary (case No. 2); first degree rape (case No. 3 — the case before the Court of Special Appeals which was reported); and first degree rape, first degree sexual offense, and statutory nighttime housebreaking (case No. 4). Motions to suppress statements made by Kennedy were denied in each case. The four cases were heard by three different judges. For purposes of the appeal here the only question is whether they should have been excluded under *Johnson.* No issue is taken with the finding by the trial judges that each of these statements was voluntarily made. Kennedy's position is that the statements are inadmissible since there was a delay of nearly twelve hours between his initial arrest and his appearance before a judicial officer.

The facts here will be better understood by reference to the following time table as gleaned from the agreed statement of facts:

## August 23, 1977

8:20 a.m. — Kennedy was surprised at the scene of an alleged rape in progress in Takoma Park. He was captured by police after a brief foot race. When he attempted to blurt out to his captor that someone "made [him] do it," he was advised not to say anything more and to keep quiet. He continued to speak. He was read his *Miranda* rights. He interrupted twice saying he knew his rights. Advice as to those rights was completed, however.

---

**2.** The parties in their briefs have referred to these cases by the numbers assigned to the various cases in the Court of Special Appeals. For convenience we have numbered them 1, 2, 3, and 4 in the sequence in which they there appear.

58

9:00 a.m. — Kennedy was transported to the Takoma Park police station and placed in a holding cell.

1:00 p.m. — Detective Wortman of the Takoma Park police arrived at the police station. He orally advised Kennedy of his *Miranda* rights which Kennedy waived.

1:30 p.m. — Kennedy was taken to an interview room and again advised of his *Miranda* rights. A written waiver form was executed. A summary was given of the ongoing investigation of Kennedy in connection with rapes in the Takoma Park area. Rapes involved in cases Nos. 1, 2, and 3 here were among the eight cases discussed. However, the officer did not question Kennedy about these three rapes at that time. Kennedy mentioned rape No. 2 but could not remember its location. The officer told him that prior to his arrest his picture had been identified by the victims of two sexual assaults not involved in this appeal. He then made three self-incriminating statements, none of which referred to the charges at issue in this appeal. The interrogation lasted about two hours.

5:45 p.m. — Detective Brown of the Washington, D.C., police arrived as the result of advice from Detective Wortman that Kennedy was in custody.

6:50 p.m. — 7:24 p.m. — Kennedy waived *Miranda* rights as given by Detective Brown and was questioned further.

7:45 p.m. — Kennedy was transported to the Silver Spring police station.

8:10 p.m. — Kennedy appeared before a commissioner. Charging documents were filed in three

cases. *No* charging document in the four cases involved in this appeal were filed at that time. Advice was given to Kennedy as to his rights under M.D.R. 723 a. A preliminary hearing date was set. Bail was denied. He was transported back to the Takoma Park police station.

11:00 p.m. — Kennedy received clothes from his girl friend and spoke with her. He had called her at 3:00 p.m.

11:20 p.m. — Kennedy was again advised of his *Miranda* rights which he waived. He was questioned by Detectives Stone and Toomey of the Montgomery County Police Department. Incriminating statements were made about certain sexual assaults. None of those are involved in this appeal. He may have made an inexact reference to the rape involved in case No. 4. The detectives did not deem this reference significant at that time.

August 24, 1977

2:30 a.m. — Kennedy was transported by Detective Wortman to Adventist Hospital so that blood and hair samples might be taken.

4:00 a.m. — Kennedy was transferred to Montgomery County Detention Center.

Undisclosed hour in morning — Kennedy was taken before a District Court judge to be charged on cases not involved here and also for a bond review.

3:30 p.m. — Detective Stone removed Kennedy from the detention center and took him to the Silver Spring police station. He was again given *Miranda* warnings and again waived his rights thereunder. He was interrogated by Detectives Stone and Toomey.

5:45 p.m. — Kennedy was interrogated about and made a self-incriminating statement relative to case No. 4. After this statement he was offered immunity for and questioned about certain other incidents.

8:15 p.m. — Kennedy was advised by Wortman that his photograph had been identified earlier in the day by a rape victim. He then made the confession at issue in case No. 3.

11:00 p.m. — Kennedy was returned to the detention center.

### August 25, 1977

3:00 p.m. — Wortman and another detective took Kennedy out of the detention center. He was given *Miranda* warnings, which he again waived. The detectives drove him around Takoma Park to the scenes of certain sexual assaults. He made further self-incriminating statements concerning the rape involved in case No. 3. He also made the self-incriminating statement at issue in case No. 1.

4:00 p.m. — Kennedy made a self-incriminating statement in case No. 2.

### August 26, 1977

Kennedy was taken to the District of Columbia for questioning by police there.

9:00 a.m. — An arrest warrant was obtained for Kennedy in connection with case No. 3. The warrant was not served because it was decided to initiate proceedings against him by indictment. The warrant was filed as a detainer against Kennedy.

To summarize, Kennedy appeared before a commissioner at 8:10 p.m. on August 23 and before a district judge at an

undisclosed hour prior to 3:30 p.m. on August 24. He made the statement in case No. 4 in an interrogation that began at 5:45 p.m. on August 24. His statement at issue in case No. 3 stemmed from interrogation beginning at 8:15 p.m. on August 24. His self-incriminating statement in case No. 1 came at an interrogation that began at 3:00 p.m. on August 25. His statement in case No. 2 was made at 4:00 p.m. on that date.

I

In *Johnson* we adopted a non-constitutional per se exclusionary rule holding "that any statement, voluntary or otherwise, obtained from an arrestee during a period of unnecessary delay in producing him before a judicial officer, thereby violating M.D.R. 723 a, is subject to exclusion when offered into evidence against the defendant as part of the prosecution's case-in-chief." *Id.* 282 Md. at 328-29. In that case the defendant had been held for more than twenty-four hours after his arrest without appearance before a judicial officer, despite the availability of a commissioner at all times. The State contended in *Johnson* that the provisions of M.D.R. 723 a were directory only. We held them to be mandatory. We recognized that our rule was a Maryland embodiment of the so-called *McNabb-Mallory* rule which stemmed from *Mallory v. United States,* 354 U.S. 449, 77 S. Ct. 1356, 1 L. Ed. 2d 1479 (1957); *Upshaw v. United States,* 335 U.S. 410, 69 S. Ct. 170, 93 L. Ed. 100 (1948); and *McNabb v. United States,* 318 U.S. 332, 63 S. Ct. 608, 87 L. Ed. 819 (1943). *Id.* at 323. We likewise recognized that the rule enunciated in those cases had been placed in Federal Criminal Rule 5 (a). Judge Orth pointed out for the dissenters that, quoting from 2 G. Liebmann, *Maryland District Court Law and Practice* § 941 at 142 (1976),

> "As originally proposed, the [Maryland] rule would have directly tracked the provisions of Rule 5 (a) of the Federal Rules of Criminal Procedure which as construed constitutes the so-called Mallory Rule. The language of the first sentence of M.D.R. 709(a) following 'without unnecessary delay' was added to

supply an interpretive gloss following vigorous objection to the earlier draft by Police Commissioner Pomerleau of Baltimore City and by the State's Attorneys' Association." [*Id.* at 338.]

Federal Criminal Rule 5 (a) was supplanted by the passage of Title II of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. 3501. It provides in subsection (c) that a confession is not inadmissible solely because of delay in bringing a person before a commissioner if the trial judge finds that the confession was voluntarily made, if the weight to be given to it is left to the jury, and if the confession was made within six hours following arrest. Since our rule is modeled on that prevailing in the federal courts prior to 1968, we turn to an examination of federal court decisions relative to that rule.

In *United States v. Mitchell,* 322 U.S. 65, 64 S. Ct. 896, 88 L. Ed. 1140 (1944), a United States Court of Appeals had reversed a conviction solely on the ground that the admission of stolen property secured from his home through his consent and of testimony of his oral confessions were barred by *McNabb.* The Court quoted from the opinion in *McNabb. Id.* at 66-67. In *McNabb* the Court said, in discussing the purpose of legislation requiring arresting officers to bring arrested persons before a committing magistrate with reasonable promptness:

It aims to avoid all the evil implications of secret interrogation of persons accused of crime. It reflects not a sentimental but a sturdy view of law enforcement. It outlaws easy but self-defeating ways in which brutality is substituted for brains as an instrument of crime detection. A statute carrying such purposes is expressive of a general legislative policy to which courts should not be heedless when appropriate situations call for its application [*Id.* 318 U.S. at 344.]

The Court pointed out in *Mitchell* that in *McNabb:*

[T]he defendants were illegally detained under aggravating circumstances: one of them was

subjected to unremitting questioning by half a dozen police officers for five or six hours and the other two for two days. [*Id.* 322 U.S. at 67.]

In *Mitchell* houses in the District of Columbia had been broken into in August and early October. The trail of police investigation led to Mitchell who was taken into custody at 7:00 p.m. on October 12. Within a few minutes of his arrival at the police station he admitted his guilt, advised the officers of various items of stolen property which could be found in his home, and consented to their going to his home to recover the property. It was those admissions and that property which supported the convictions and which were deemed by the United States Court of Appeals to be inadmissible under *McNabb.* It was not until eight days after the statements were made that Mitchell was arraigned before a committing magistrate. From this he argued that the circumstances of legality attending the making of his oral statements were nullified. The Court pointed out that the circumstances of disclosure by Mitchell were different from those in *McNabb* in that the disclosure was not induced by illegal detention. Mr. Justice Frankfurter further said for the Court:

[T]he illegality of Mitchell's detention does not retroactively change the circumstances under which he made the disclosures. These, we have seen, were not elicited through illegality. Their admission, therefore, would not be use by the Government of the fruits of wrongdoing by its officers. Being relevant, they could be excluded only as a punitive measure against unrelated wrongdoing by the police. Our duty in shaping rules of evidence relates to the propriety of admitting evidence. This power is not to be used as an indirect mode of disciplining misconduct. [*Id.* at 70-71.]

In *United States v. Bayer,* 331 U.S. 532, 67 S. Ct. 1394, 91 L. Ed. 1654 (1947), an individual made a confession which the Court said it would assume was "inadmissible under the rule laid down in *McNabb v. United States,* 318 U.S. 332,

and *Anderson v. United States,* 318 U. S. 350." *Id.* at 539-40. That confession, neither offered nor received in evidence, was made while the defendant was being held incommunicado without the prompt filing of charges against him as he said was required by the 70th Article of War and without his being taken before a magistrate for arraignment on any charges preferred by civil authorities. After his release he made a second confession which the Court of Appeals held inadmissible as "patently the fruit of the earlier one," citing *Nardone v. United States,* 308 U.S. 338, 60 S. Ct. 266, 84 L. Ed. 307 (1939), and *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S. Ct. 182, 64 L. Ed. 319 (1920). In rejecting this reasoning, Mr. Justice Jackson said for the Court:

> Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed. The *Silverthorne* and *Nardone* cases, relied on by the Court of Appeals, did not deal with confessions but with evidence of a quite different category and do not control this question. The second confession in this case was made six months after the first. The only restraint under which Radovich labored was that he could not leave the base limits without permission. Certainly such a limitation on the freedom of one in the Army and subject to military discipline is not enough to make a confession voluntarily given after fair warning invalid as evidence against him. We hold the admission of the confession was not error. *Cf. Lyons v. Oklahoma,* 322 U.S. 596. [*Id.* at 540-41.]

*Bayer* has been cited with approval by the Supreme Court as recently as 1978. *See United States v. Ceccolini,* 435 U.S. 268, 278, 98 S. Ct. 1054, 55 L. Ed. 2d 268 (1978). It has been followed and discussed in *United States v. Davis,* 617 F.2d 677 (D.C. Cir. 1979); *Feguer v. United States,* 302 F.2d 214 (8th Cir. 1962); *Jackson v. United States,* 285 F.2d 675 (D.C. Cir. 1960); and *Goldsmith v. United States,* 277 F.2d 335 (D.C. Cir. 1960). In *Goldsmith* confessions made before arraignment were held by the trial judge to be inadmissible under *Mallory.* However, after the arraignment the defendants reaffirmed their prior written statements. The trial judge charged the jury that those statements were to be considered only if the reaffirmation of these statements following the arraignment was found by the jury to be voluntary. On appeal it was contended that they were "inadmissible because they were the fruit of the original confessions . . . ." *Id.* 277 F.2d at 340. The court quoted from *Bayer* in rejecting the contentions of the appellants. *Id.* at 340. Judge Burger said for the court:

> The reaffirmation of those statements *after* arraignment, and the new and spontaneous utterances then made, which are independently admissible, remove any question about the admissibility of the substance and content of what appellants confessed. [*Id.* at 345 (emphasis in original).]

*McNabb, Mallory, Bayer, Nardone,* and *Goldsmith* were all mentioned in *Jackson.* There Judge Danaher said for the court:

> We have seen no case which holds that where an accused has once made a confession, excludable because of police violation of Rule 5, he is thereafter precluded from making a valid confession adducing the same subject matter, and so as to reaffirmation. It would seem that the stated reason for the exclusionary rule will fairly negate any such result. [*Id.* 285 F.2d at 679.]

In *Feguer* it was pointed out by Judge Blackmun for the court:

> Because a subsequent statement happens to be the same as a prior one suppressed under the McNabb rule, does not necessarily mean the second is the wrongful fruit of the original. It is a relationship of dependency between the two which creates the "fruit of the poisonous tree" result. United States v. Bayer, 1947, 331 U.S. 532, 67 S. Ct. 1394, 91 L. Ed. 1654. [*Id.* 302 F.2d at 251.]

In *Davis* it was alleged that incriminating statements were made as a result of police coercion. Thereafter, the accused testified before a grand jury. This was after being advised of his rights and conceding that he understood them. Moreover, the statements were made at a time when he was free on bond and "represented by counsel, with whom 'he was regularly in contact' . . . ." He contended that the trial judge should have suppressed his grand jury testimony because it was involuntary. The court quoted from *Bayer* before saying:

> The exclusionary rule has served its deterrent purpose in the present case by disallowing the use of statements Galestino made at the time government officials illegally arrested and questioned him. To apply the exclusionary rule to his grand jury testimony, rendered freely and voluntarily after time to consult with counsel and to reflect on his decision to cooperate, would serve no legitimate goal. The taint of the Government's illegality had dissipated by the time Galestino took the witness stand. Judge Jones properly admitted his grand jury testimony at trial. [*Id.* 617 F.2d at 689.]

In *Carignan v. United States,* 185 F.2d 954 (9th Cir. 1950), a confession was held inadmissible because given before arrest, indictment, or commitment on a murder charge. It was given after the accused had been duly committed to jail under a warrant which charged that at a time six weeks

after the murder he had perpetrated an assault with intent to rape. The court was of the view that the admission was contrary to the principles expounded in *McNabb* and *Upshaw*. The Supreme Court reversed in *United States v. Carignan,* 342 U.S. 36, 72 S. Ct. 97, 96 L. Ed. 48 (1951). Mr. Justice Reed observed for the Court:

> So long as no coercive methods by threats or inducements to confess are employed, constitutional requirements do not forbid police examination in private of those in lawful custody or the use as evidence of information voluntarily given. [*Id.* at 39.]

The Court said that in *Mitchell* it "decided that the *McNabb* rule was not intended as a penalty or sanction for violation of R.S.D.C. § 397, a commitment statute," and that "[t]he same conclusion applies to Rule 5, Federal Rules of Criminal Procedure." *Id.* at 42. The Court further said:

> One cannot say that this record justifies characterization of this confession as given during unlawful detention. Rule 5, Federal Rules of Criminal Procedure, does not apply in terms, because Carignan was neither arrested for nor charged with the murder when the confession to that crime was made. He had been arrested and committed for the assault perpetrated six weeks after the murder. His detention, therefore, was legal. Further, before the confession, there was basis for no more than a strong suspicion that Carignan was the murderer. [*Id.* at 43-44.]

\* \* \*

> We decline to extend the *McNabb* fixed rule of exclusion to statements to police or wardens concerning other crimes while prisoners are legally in detention on criminal charges. [*Id.* at 45.]

*Carignan* has been cited and followed in *Amsler v. United States,* 381 F.2d 37, 47 (9th Cir. 1967); *Government of Virgin*

*Islands v. Lovell,* 378 F.2d 799, 804 (3d Cir. 1967); *United States v. Vandam,* 309 F.2d 578, 579-80 (6th Cir. 1962); and *Palakiko v. Harper,* 209 F.2d 75, 94 (9th Cir. 1953) ("Even in a jurisdiction in which Rule 5 obtains, it and the doctrine of the McNabb case have no application to the police examination of a prisoner lawfully arrested and held under another charge."). A somewhat similar observation was made by Chief Judge Sobeloff for the court in *United States v. Bellamy,* 326 F.2d 389, 391 (4th Cir. 1964), although *Carignan* was not cited.

Kennedy relies upon *Harrison v. United States,* 392 U.S. 219, 88 S. Ct. 2008, 20 L. Ed. 2d 1047 (1968). That case is not apposite. Confessions obtained in violation of *McNabb* were admitted at Harrison's first trial. In response to those confessions he took the stand and made incriminating admissions. His conviction was reversed on appeal on the ground of *McNabb.* At the second trial the prosecution introduced the defendant's testimony from the first trial. The Court held this was error, stating, "It has not been demonstrated ... that the petitioner's testimony was obtained 'by means sufficiently distinguishable' from the underlying illegality 'to be purged of the primary taint,' " citing *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). *Id.* at 226.

Each statement at issue in the case at bar was taken *after* Kennedy's appearance before a judicial officer. The only issue here is whether they should have been excluded under the non-constitutional per se exclusionary rule of *Johnson.* The statements in the cases at bar can in no way be said to be the fruit of illegal activity. They were not made in disregard of M.D.R. 723 a. The trial judge found them to be voluntarily made. They were made subsequent to Kennedy's appearance before two judicial officers, a commissioner and a district judge. Questioning relative to these cases did not begin until after those appearances. As the Supreme Court declined in *Carignan* to extend the *McNabb-Mallory* "fixed rule of exclusion to statements to police or wardens concerning other crimes while prisoners are legally in detention on criminal charges," we decline to so extend

*Johnson.* See 342 U.S. at 45. Applying that reasoning, it follows that a statement is admissible which is made by one in lawful custody *after* he has been brought before a judicial officer as required by M.D.R. 723 a notwithstanding the fact that at the time of his original incarceration in an unrelated case he might not have been promptly brought before such a judicial officer where it can be said as here that the statement was not produced by the prior violation of the rule. Accordingly, the Court of Special Appeals and the trial judge did not err in these cases.

## II

Kennedy contends that since in case No. 3 the police had ample probable cause to arrest him he should have been considered under arrest for the purposes of M.D.R. 723 a. Hence, he argues that he should have been taken before a judicial officer without unnecessary delay and that because the charges against him were by way of indictment and he thus was never taken before such judicial officer, his statement is not admissible.

This contention is analogous to that before the Court in *Hoffa v. United States,* 385 U.S. 293, 87 S. Ct. 408, 17 L. Ed. 2d 374 (1966). Hoffa there argued under U. S. Const. Amend. VI. He claimed that as of a certain date the Government had sufficient ground for taking him into custody and charging him with jury tampering. He asserted that had it done so it could not have continued to question him without observance of his Sixth Amendment right to counsel. Thus, he said that any statements made by him subsequent to that date were not admissible into evidence because they were acquired only by flouting his Sixth Amendment right to counsel. This argument was rejected by the Court:

> Nothing in *Massiah* [*v. United States,* 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964)], in *Escobedo* [*v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964)], or in any other case that has come to our attention, even remotely suggests this

novel and paradoxical constitutional doctrine, and we decline to adopt it now. There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction. [*Id.* at 310.]

Having rejected Kennedy's claims under I, we find no merit in this contention. The reasoning there is equally applicable here. His detention was pursuant to a valid arrest warrant in another case.

### III

In case No. 2 Kennedy filed a written election of a jury trial. On the morning of trial a pretrial hearing was held at which the docket entries show the granting of his request to withdraw his election of a jury trial and to elect a court trial. A written election of the court trial was not filed, however. The trial transcript contains no reference to this waiver of the right of jury trial. The transcript of the pretrial hearing was not transmitted to the Court of Special Appeals with the record on appeal. It was ordered by Kennedy from the court reporter. He filed a motion with the Court of Special Appeals under Maryland Rule 1027 b to correct the record by making the pretrial transcript a part of the record upon transmission to that court. This motion was withdrawn, however, when he was informed by the court reporter that she had not saved her stenographic notes of the pretrial hearing and therefore she could not prepare a transcript of the hearing.

Kennedy invokes *Countess v. State,* 286 Md. 444, 408 A.2d 1302 (1979), relative to the necessary record concerning

compliance with Rule 735 d. In *Lerch v. Maryland Port Authority,* 240 Md. 438, 457, 214 A.2d 761 (1965), Judge Oppenheimer spoke for the Court of the "strong presumption that public officers properly perform their duties," citing *Fidelity & Casualty Co. v. Riley,* 168 Md. 430, 433, 178 A. 250 (1935), and *Union Trust Co. v. State,* 116 Md. 368, 372, 81 A. 873 (1911). See also *Acting Dir. Dep't of F. & P. v. Walker,* 271 Md. 711, 719-20, 319 A.2d 806 (1974). Judges are no less likely to properly perform their duties than are other public officers. Nevertheless, Kennedy contends that he is entitled to reversal on the ground that in the absence of the transcript there can be no showing that the trial judge complied with the mandate of Rule 735 d that it be determined on the record that Kennedy's waiver of a jury trial was knowingly and voluntarily made.

There has been no attempt here to reconstruct the record as was done in *Jefferson v. State,* 218 Md. 397, 400, 147 A.2d 204 (1958). *Jefferson* is neither the first nor the last case where this Court has been concerned with the absence of a stenographic transcript. See, e.g., *Michigan Nat. Bank v. Racine,* 234 Md. 250, 253-54, 198 A.2d 898 (1964); *Harmon v. State,* 227 Md. 602, 607, 177 A.2d 902 (1962); *Brinkley v. State,* 224 Md. 391, 168 A.2d 191, *cert. denied,* 368 U.S. 853 (1961); and *Jewett v. State,* 190 Md. 289, 295-96, 58 A.2d 236 (1948). These cases are instructive. Judge Markell commented for the Court in *Jewett,* "Judges' notes are older than stenographers' transcripts." *Id.* at 296. In *Brinkley* the Court said, "No court stenographer was present, but Judge Rollins filed on May 7th a full memorandum of the proceedings at the trial dictated from his bench notes . . . ." *Id.* at 393. In *Harmon* the Court said, "We may point out that under some circumstances, at least, the record may be supplemented as to what actually occurred by application to the trial judge, Maryland Rule 826 e . . . ." *Id.* at 607. That rule is now Rule 826 c stating:

> It shall not be necessary for the record on appeal to be approved by the lower court except as provided in sections c 2 or g of this Rule, but if any difference arises as to whether the record truly discloses what

occurred in the lower court, the difference shall be submitted to and settled by the lower court and the record made to conform to the truth.

Rule 1026 c relative to the Court of Special Appeals is identical.

Kennedy represents that the court reporter, prosecutor, and defense counsel all have no specific recollection of the colloquy where Kennedy changed his election from jury trial to court trial. Significantly, however, Kennedy has made no proffer of his own recollections. Despite the fact that many judges follow a set routine in such matters and that some judges, as did Judge Rollins in *Brinkley,* preserve notes concerning what is done at each trial, Kennedy has made no application to the trial judge that he specify precisely what was done.

The situation here is analogous to that where a party complains on appeal that a trial judge has erred in refusing to admit certain evidence. We have held that in the absence of a proffer in the trial court as to what that evidence would be we have nothing to review on appeal. See, e.g., *Klingensmith v. Snell Landscape,* 265 Md. 654, 663, 291 A.2d 56 (1972); *Leitch v. Anne Arundel County,* 248 Md. 611, 616, 237 A.2d 748 (1968); *M. A. Realty v. State Roads,* 247 Md. 522, 527, 233 A.2d 793 (1967); and *Hughes v. Averza,* 223 Md. 12, 18, 161 A.2d 671 (1960).

Kennedy having made no attempt to have the trial judge certify what took place and having made no specific representation on the basis of his own knowledge that there was not compliance with Rule 735 d, we decline to review the question. It is one best handled on post conviction where the record may be fully developed. See *Covington v. State,* 282 Md. 540, 544, 386 A.2d 336 (1978), and *State v. Zimmerman,* 261 Md. 11, 24, 273 A.2d 156 (1971).

*Judgments of the Court of Special Appeals affirmed; appellant to pay the costs.*