# JACK JAMES SMITH v. STATE OF MARYLAND

[No. 95, September Term, 1980.]

*Decided August 26, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*F. Ford Loker, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

We granted review in this case to decide whether appellant was effectively denied his right of appeal because portions of two state's witnesses' testimony were not preserved due to technical problems with the trial court's tape recording system. The appellant, Jack James Smith, was convicted of first degree murder and two related handgun offenses in the Circuit Court for Anne Arundel County. The Court of Special Appeals thereafter affirmed his conviction in an unreported *per curiam* opinion, *Jack James Smith v. State of Maryland,* No. 1603, September Term, 1979, filed July 18, 1980, which held the existent record sufficient, under the facts of the case, to permit adequate appellate review. For the reasons set forth herein, we affirm.

The parties have submitted an agreed statement of facts, from which we quote:

> The body of Ralph C. Verrette, a friend of Appellant, was found on a private road with two gunshot wounds to the head. In the course of the police investigation Appellant consented to searches of his car and his apartment. Blood stains were found in his automobile and on his clothes. There were no witnesses to the incident and the gun was never recovered.
>
> While testifying at trial and in a statement to police, Appellant revealed that on the evening of Verrette's death he was looking for his friend to tell him that Appellant's landlord was forbidding Verrette to share Appellant's apartment. The two were inebriated when they met. They began driving

around in Appellant's car and ended upon the private road where Verrette surprised Appellant by removing a gun from his waistband and waving it about. Being familiar with Verrette's erratic and often violent behavior, Appellant tried to take the gun away and in the course of the struggle Verrette was shot.

During presentation of the State's case the tape machine used to record the trial malfunctioned on two occasions. As a result there is no record of some of the direct examination and a portion of the cross-examination of Tony Guinta, who was Appellant's landlord and a former employer of Verrette. Also missing are the entire direct examination and a portion of the cross-examination of Dennis Fratantuono, the owner of a bar frequented by both men. Fratantuono had seen and spoken with Appellant on the day of Verrette's death. What is known of their testimony comes from the portions that were transcribed and affidavits of the prosecutor and the trial judge. Appellant's trial counsel had no independent recollection of their testimony. No one offered any recollection of objections and rulings made.

Guinta testified as to his instructions to Appellant forbidding him to share the apartment with Verrette. Appellant told him he would find Verrette and inform him accordingly. Based on the defense objection that the State was attempting to impeach its own witness, the court would not allow the State to elicit a prior inconsistent statement uttered by Guinta. The record of how defense counsel was able to use this statement does not exist. Guinta also testified as to three threatening statements Appellant made on the day of Verrette's death. Appellant had no recollection of these threats. On cross-examination Guinta was discussing Verrette's frequently strange and violent conduct when the tape machine ceased operating again.

It resumed operation at the close of Fratantuono's cross-examination. On re-direct he indicated that he believed Appellant was going to kill Verrette. He also saw Appellant remove a lug wrench from his car. When Appellant testified, he explained that the wrench was for his own protection. Fratantuono had told him that Verrette might be in some woods drinking but that Appellant should be careful about going into them to find Verrette since people had been mugged there. Appellant did not deny saying he would kill Verrette but indicated that if he said it, it was just barroom talk typical of someone who was intoxicated.

In the closing arguments presented by the prosecution and the defense, both attorneys commented upon the testimony of Tony Guinta and Dennis Fratantuono. Each mentioned portions of the testimony of those witnesses concerning the threats by Appellant against the victim's life, uttered on the day of the killing, and prior instances of strange and violent behavior of the victim.

At the outset we emphasize that appellant has never made application to the trial judge to correct the record under Maryland Rules 826 (c) or 1026 (c), which are substantially similar. Rule 826 (c) provides:

It shall not be necessary for the record on appeal to be approved by the lower court except as provided in sections c2 or g of this Rule, but if any difference arises as to whether the record truly discloses what occurred in the lower court, the difference shall be submitted to and settled by the lower court and the record made to conform to the truth.

Our inquiry focuses upon whether the result in the instant case should parallel that of *Kennedy v. State,* 289 Md. 54, 421 A.2d 1376 (1980). In *Kennedy* we held, *inter alia,* that where a court reporter had destroyed stenographic notes of the hearing at which the defendant waived the right to a jury trial, but where no attempt to reconstruct the record was

made by his attorney, either by proffer or by application to the trial judge per Rule 826 (c) or 1026(c), a reversal was not warranted on the ground that there may have been a violation of Rule 735 (d) (requiring that it be determined on the record that a defendant's waiver of jury trial is knowingly and intelligently made). *Cf. In re: Dewayne H.* 290 Md. 401, 430 A.2d 76 (1981); *Michigan Nat. Bank v. Racine,* 234 Md. 250, 198 A.2d 898 (1964). The instant case, however, differs in several respects.

First, we are not confronted here with pre-trial proceedings governed by Rule 735 (d) but with portions of testimony not recorded at trial as required by Rule 1224. This Rule, which became effective July 1, 1974, requires that a verbatim recordation be made, "[i]n criminal cases, other than appeals to the District Court, [of] the entire trial on the merits held in open court, including opening statements and closing arguments of counsel." Md. Rule 1224 (d) (1) (a). Secondly, in the instant case, appellant's argument is not based upon the assertion of specific error; rather he argues broadly that the unavailability of a *complete* transcript of proceedings, coupled with the assertedly incomplete memory of his trial counsel, in and of themselves are such as to deprive appellant of meaningful appellate review. *Cf. Michigan Nat. Bank v. Racine, supra.*

Thirdly, we must consider the effect of certain affidavits prepared by the prosecutor, the trial judge and the defendant's trial counsel, a public defender, all of which were made part of the record on appeal to the Court of Special Appeals pursuant to uncontested motions made under Rule 1027 (d). Two affidavits, one for each witness, were prepared by the State prosecutor at the request of the State and were replete with testimonial detail, but made no mention of any objections or rulings which may or may not have been made. The affidavit filed by the trial judge, also at the State's request, was consistent with those signed by the prosecutor and consisted of the following statement:

> At the request of the State, I have reviewed my notes which I took during the trial of *State v. Jack Smith.*

Tony Guinta, a witness called by the State, testified that the accused was looking for Verrette, the victim, and that the accused would ". . . blow him away."

Dennis Fratantuono, a witness called by the State, testified he heard the accused say that he was going to kill Verrette.

I do not recall if objections were made by the defense to the admissibility of these statements. However, the presence of these statements in my notes indicates that any objections would have been overruled.

The affidavit prepared by the public defender neither substantiated nor conflicted with the information contained in the others, as it stated that he had "no independent recollection" of what should have been contained in the missing portions of the transcript.

We turn first to the impact of Rule 1224. Although it was included in our Rules without an official comment or committee note, we find little difficulty in enunciating what is obviously the purpose of provisions such as that contained in Rule 1224 (d) (1) (a): to preserve a correct and precise account of the evidence and rulings at trial, and to assure the ability of courts and of counsel to perform their duties efficiently and completely. Instructive are the findings of *United States v. Taylor,* 303 F.2d 165, 169 (4th Cir. 1962), with respect to a similar federal rule contained in the Court Reporter Act:

The provisions of [28 U.S.C.] § 753 (b) are designed to preserve a correct and authentic record of criminal proceedings free from the infirmities of human error and they provide a safeguard to which not only the court but also the defendant is entitled in the preservation of his rights. See Stephens v. United States, 5 Cir., 289 F.2d 308.

Much of the federal law dealing with the availability of transcripts has arisen in cases involving the rights of indigent defendants. *E.g., Mayer v. Chicago,* 404 U.S. 189, 92

S. Ct. 410, 30 L. Ed. 2d 372 (1971); *Hardy v. United States,* 375 U.S. 277, 84 S. Ct. 424, 11 L. Ed. 2d 331 (1964); *Norvell v. Illinois,* 373 U.S. 420, 83 S. Ct. 1366, 10 L. Ed. 2d 456 (1963); *Draper v. Washington,* 372 U.S. 487, 83 S. Ct. 774, 9 L. Ed. 2d 889 (1963); *Griffin v. Illinois,* 351 U.S. 12, 76 S. Ct. 585, 100 L. Ed. 891 (1956). The decision in *Hardy v. United States, supra,* differed significantly from that of earlier cases, however, because of the Court's focus upon the Court Reporter Act. In *Hardy* it was held, in an opinion authored by Justice Douglas, that an indigent who seeks to appeal and is represented by a different attorney from the one who defended him at trial must be given a complete trial transcript at government expense. The Court explained:

> We deal with the federal system where the appeal is a matter of right (*Coppedge v. United States,* [369 U.S. 438,] 441; 28 U.S.C. §§ 1291, 1294), and where the appellant is entitled to "the aid of counsel unless he insists on being his own." *Johnson v. United States,* 352 U.S. 565, 566. . . . Further, a transcript is available for appeal purposes, Congress having provided in the Court Reporter Act, 28 U.S.C. § 753 (b), that a transcript "by shorthand or by mechanical means" of "all proceedings in criminal cases had in open court" shall be made. . .
>
> . . . .
>
> A court-appointed counsel who represents the indigent on appeal gets at public expense, as a minimum, the transcript which is relevant to the points of error assigned. *Coppedge v. United States, supra,* at 446; *Ingram v. United States, supra.* But when, as here, new counsel represents the indigent on appeal, how can he faithfully discharge the obligation which the court has placed on him unless he can read the entire transcript? . . . The right to notice "plain errors or defects" is illusory if no transcript is available at least to one whose lawyer on appeal enters the case after the trial is ended.

> The duty of counsel on appeal, as we noted in *Ellis v. United States,* 356 U.S. 674, 675, is not to serve as *amicus* to the Court of Appeals, but as advocate for the appellant. . . .
>
> We deal here only with the statutory scheme and do not reach a consideration of constitutional requirements. We see no escape from the conclusion that either where the requirements of a non-frivolous appeal prescribed by *Coppedge v. United States, supra,* are met, or where such a showing is sought to be made, and where counsel on appeal was not the counsel at the trial, the requirements placed on him by *Ellis v. United States, supra,* will often make it seem necessary to him to obtain an entire transcript.
>
> We conclude that this counsel's duty cannot be discharged unless he has a transcript of the testimony and evidence presented by the defendant and also the court's charge to the jury, as well as the testimony and evidence presented by the prosecution. [375 U.S. at 278-82 (footnotes omitted)].

Although the majority stated that its focus was upon the statutory scheme, an important step in analysis — calling attention to appointed counsel's duty as an advocate — seemed constitutionally based. P. Kurland, *The Supreme Court — 1963 Term,* 78 Harv. L. Rev. 143, 265 (1964). Nevertheless, the Supreme Court has consistently held that the states are not required to furnish complete transcripts where there are alternate means of review just as effective as those available to paying defendants. *E.g. Draper v. Washington, supra; Griffin v. Illinois, supra.* However, as pointed out by Justice Goldberg's concurring opinion in *Hardy* joined by Chief Justice Warren and Justices Brennan and Stewart:

> As any effective appellate advocate will attest, the most basic and fundamental tool of his profession is the complete trial transcript, through which his trained fingers may leaf and his trained eyes may

> roam in search of error, or even a basis upon which to urge a change in an established and hitherto accepted principle of law. Anything short of a complete transcript is incompatible with effective appellate advocacy. [375 U.S. at 288 (footnote omitted)].

It is difficult to challenge the logic of such analysis. But does it mean that courts must grant defendants a new trial in every case in which some portion of trial testimony cannot be produced for appellate counsel's review? We think not. It is one thing to discriminate against the indigent by not providing the tools available to paying defendants or to thwart basic notions of fairness by failing to require the presence of a court reporter or stenographer per Rule 1224. It is quite another to provide the means to preserve the record of trial to all defendants fairly and equally and then to have those means prove defective through no fault of the prosecution. We do not believe, therefore, that every inadvertent omission in the record would call for reversal or would justify the time and expense incident to a new trial.

It would wreak havoc on the administration of justice to require reversal in each and every case in which it is alleged by an appellant that portions of trial testimony have not been preserved verbatim for review. As anyone familiar with appellate review can attest, transcripts are seldom perfect. Mistakes inevitably occur. Punctuation, for example, is a matter of judgment. Whenever two or more persons speak simultaneously, it is difficult to assign priority of statement or to reproduce the exact statements of each. *See* Report, *Court Reporting Services in Maryland* 83 (National Center for State Courts, March 1976). Electronic recording or stenographic equipment will occasionally fail. Court reporters will occasionally become ill or die in office, or will simply misplace their notes. Sometimes the errors or omissions will be insignificant, presenting a situation quite different from that in which most or all of the testimony at trial cannot be reviewed verbatim on appeal.

Understandably, therefore, it has been necessary for

courts to proceed on a case-by-case basis. In all of such cases, however, where the blame rests not with the prosecution, the situation is more suitably aligned with cases *not* falling under the rule announced in *Hardy*. In *Mayer v. Chicago, supra,* 404 U.S. at 195, for example, the Supreme Court held that where a defendant's "grounds of appeal . . . make out a colorable need for a complete transcript, the burden is on the State to show that only a portion of the transcript or an 'alternative' will suffice for an effective appeal on those grounds." The Court ruled that while the State must afford the indigent "a record of sufficient completeness," this "does not translate automatically into a complete verbatim transcript." 404 U.S. at 194. The Court again stood behind the views it had espoused in *Griffin.* A State may find other means to afford adequate and effective review to indigent defendants. The preparation of an agreed statement of facts, as suggested in *Draper,* was cited as a substitute method.

Ordinarily, where there is some defect in the transcript not attributable to discrimination or inherent unfairness by the prosecution, an appellant has traditionally carried a heavy burden on appeal. In *United States v. Di Canio,* 245 F.2d 713 (2d Cir.), *cert. denied* 355 U.S. 874, 78 S. Ct. 126, 2 L. Ed. 2d 79 (1957), it was held that where the court stenographer died before transcribing the minutes of trial and the transcript was prepared by another court reporter and contained 32 omissions where the notes had not been sufficiently legible, the omissions were trivial in character and would not require reversal of the defendant's conviction and a grant of new trial. The Court reasoned:

> There is no rule of thumb to govern the action of this court on an appeal from a criminal conviction in those instances where the court stenographer who reported the trial has died and another reporter has prepared the transcript from stenographic notes. The absence of a completely accurate transcript does not, without more, invalidate a conviction. A new trial will be ordered only if necessary to the protection of a party's

rights. Hence, the defects must be of a prejudicial character, not merely inconsequential inaccuracies or omissions. Nor do we say any distinction is necessarily to be drawn between civil and criminal appeals. Each case must stand on its own bottom; and the outcome will depend upon the circumstances of the particular case. See Annotation, 19 A.L.R.2d 1098. [245 F.2d at 715].

*Cf. United States v. Weiner,* 578 F.2d 757, 788-89 (9th Cir. 1978); *United States v. Piascik,* 559 F.2d 545, 547-48 (9th Cir. 1977) (discussing impact of Court Reporter Act).

In *Norvell v. Illinois, supra,* the Supreme Court addressed "the narrow question — whether a State may avoid the obligation of *Griffin v. Illinois,* where, without fault, no transcript can be made available, the indigent having had a lawyer at the trial and no remedy having been sought at the time." *Norvell v. Illinois, supra,* 373 U.S. at 422. It was reasoned:

When, through no fault of the State, transcripts of criminal trials are no longer available because of the death of the court reporter, some practical accommodation must be made. We repeat what was said in *Metropolis Theatre Co. v. Chicago,* 288 U.S. 61, 69-70:

"The problems of government are practical ones and may justify, if they do not require, rough accommodations — illogical, it may be, and unscientific. . . . What is best is not always discernible; the wisdom of any choice may be disputed or condemned."

The "rough accommodations" made by government do not violate the Equal Protection Clause of the Fourteenth Amendment unless the lines drawn are "hostile or invidious." *Welch v. Henry,* 305 U.S. 134, 144. We can make no such condemnation here. For, where transcripts are no longer available, Illinois may rest on the presumption that he who

had a lawyer at the trial had one who could protect his rights on appeal. [373 U.S. at 424].

State cases as well have held that the inability to prepare a complete verbatim transcript, in and of itself, does not necessarily present a sufficient ground for reversal. *E.g., People v. Scott,* 23 Cal. App. 3d 80, 100 Cal. Rptr. 34 (1972); *People v. Horton,* 95 Mich. App. 561, 291 N.W.2d 121 (1980); *People v. Robinson,* 33 Mich. App. 304, 189 N.W.2d 777 (1971); *Reyes v. Delgado,* 81 P.R.R. 906 (1960); *Williams v. State,* 427 S.W.2d 868 (Tex. Crim. App. 1967), *cert. denied,* 391 U.S. 926, 88 S. Ct. 1826, 20 L. Ed. 2d 665 (1968); *State v. Bolling,* 246 S.E.2d 631 (W. Va. 1978). In general, states have placed the onus upon the appellant to show that the omissions are not merely inconsequential, but are in some manner relevant on appeal. *E.g., Osborne v. State,* 290 So. 2d 93 (Fla. App. 1974); *State v. Wright,* 97 Idaho 229, 542 P.2d 63 (1975); *People v. Robinson, supra; State v. Bolling, supra.*

Sometimes substitute statements or affidavits can be prepared to replace or to supplement the record, thus providing an appellant with adequate material for the court to review. *E.g., People v. Scott, supra; Commonwealth v. Hughes,* 480 Pa. 311, 389 A.2d 1081 (1978); *State v. Goodbier,* 367 So.2d 356 (La. 1979); *Williams v. State, supra. See People v. Horton, supra; People v. Drew,* 26 Mich. App. 337, 182 N.W.2d 566 (1970); *State v. Neely,* 21 N.C. App. 439, 204 S.E.2d 531 (1974). In states that have some established procedure for correcting the record, most have required the appellant and the appellee to make diligent inquiry and effort to put together an equivalent picture of the events at trial. *Osborne v. State, supra. See State v. Wright, supra; People v. Horton, supra; People v. Sharp,* 9 Mich. App. 34, 155 N.W.2d 719 (1967); *State v. Neely, supra. Cf. Commonwealth v. Hughes, supra; Williams v. State, supra; State v. Bolling, supra. But cf. Commonwealth v. Shields,* 477 Pa. 105, 383 A.2d 844 (1978). Such a procedure has been provided for in the federal system as well, under Rule 10 (c) of the Federal Rules of Appellate Procedure. *See United States v. Piascik, supra.*

It is only when an adequate substitute cannot be made that most states will consider an appellant's contention that he has been deprived of meaningful appellate review. *See People v. Apalatequi,* 82 Cal. App. 3d 970, 147 Cal. Rptr. 473 (1972); *Commonwealth v. De Simone,* 447 Pa. 380, 290 A.2d 93 (1972); *Reyes v. Delgado, supra. Cf. State v. Larson,* 62 Wash. 2d 64, 381 P.2d 120 (1963). *But see State ex rel. Kisner v. Fox,* 267 S.E.2d 451 (W. Va. 1980).

We believe that requiring the defendant to do his part in attempting to reconstruct portions of the record which are missing through no fault of the prosecution does not offend notions of criminal due process. *See, e.g., People v. Robinson, supra; State v. Neely,* 26 N.C. App. 707, 217 S.E.2d 94, *cert. denied and app. dismissed,* 288 N.C. 512, 219 S.E.2d 347 (1975). As noted by Justice Frankfurter, concurring in *Griffin v. Illinois, supra,* 351 U.S. at 21:

> "[T]he right of appeal may be accorded by the State to the accused upon such terms as in its wisdom may be deemed proper." *McKane v. Durston,* 153 U.S. 684, 687-88. The States have exercised this discriminating power. The different states and the same state from time to time have conditioned criminal appeals by fixing the time within which an appeal may be taken, by delimiting the scope of review, by shaping the mechanism by which alleged errors may be brought before the appellate tribunal, and so forth.

Although appellant claims he must have a new trial because, in any event, his counsel at trial has no "independent recollection of the events at trial" from which a substitute statement could be prepared, this assertion, by itself, is insufficient to relieve him of his obligation to do his part in attempting to settle the record on appeal. Again, as in *Kennedy v. State, supra,* it is noteworthy that there has been no assertion that appellant himself has a faulty recollection of the legal events and testimony which transpired during the portions of examination and cross-examination which were not preserved verbatim for review. In addition,

although he asserts that the affidavit filed by the trial judge, on the State's request, demonstrates the unsuitability of the court's recollection as well, appellant has directed no inquiry to the trial court to determine whether, in fact, more specific information could not have been provided.

Here, it is the failure of appellant to demonstrate that he has been diligent in his attempt to reconstruct the missing testimony which delivers the crucial blow to his argument that a new trial is required; for, as in *Kennedy*, no application was made to the trial judge per Rule 826 (c) or 1026 (c). No effort whatsoever was made on appeal to supplement the record by motion to the appellate court or to demonstrate the manner, if any, in which the affidavits supplied by the State and the trial court are insufficient to provide appellant with adequate appellate review. The appellant has the responsibility to make a sincere effort to perfect the record. Here he has done nothing.

*Judgment affirmed.*
*Appellant to pay the costs.*